## BANK OF WYNNE & TRUST COMPANY *v.* STAFFORD & WIMMER.

### Opinion delivered May 14, 1917.

1. BILLS AND NOTES—PAYMENT—DELIVERY OF CHATTELS.—Appellee executed notes to appellant for $500, which were to be paid by the delivery to appellant of a certain amount of brick. Appellant became insolvent and was taken over by the State Bank Commissioner, who sued on the notes. *Held,* as there had been no delivery of the brick to the bank, that appellee's plea of payment was unavailing, although he stated that he had stood ready to deliver the brick, and that the trial court should have so declared as a matter of law.

2. ATTACHMENT—GROUNDS FOR—PRACTICE.—Where an attachment has been levied, it is proper practice for the trial court to determine the issue raised as to the existence of grounds for attachment, and should not submit that issue to the jury.

3. ATTACHMENT—DISCHARGE—DAMAGES.—Where an attachment is discharged, the court should leave it to the jury to assess the damages sustained by the defendant by reason of the attachment.

Appeal from Cross Circuit Court; *W. J. Driver,* Judge; reversed.

*S. W. Ogan,* for appellants.

1. The plea of payment was not sustained. None of the officers of the bank had the power to loan the funds of the bank and agree to accept anything except money in payment. Kirby's Digest, § 839; 3 R. C. L., p. 420, § 47. Such transactions are expressly prohibited by the Banking Act. Act 113, Acts 1913, § 29, p. 479, and §§ 75-6; 3 R. C. L. 448-9; Taylor on Private Corporations, 206-7.

2.    A usage to be good must be general and of long standing.    62 Ark. 33.

3.    The court should have passed on the attachment. Kirby's Digest, § 366; 38 Ark. 528.

4.    The verdict is erroneous.    The question of payment in brick, never delivered, should not have been submitted to the jury.

*J. C. Brookfield,* for appellee.

1.    Trust companies may deal in real or personal property and choses in action.    The delivery of the brick was shown.    Kirby's Digest, § § 887-890; 102 Ark. 344; 112 *Id.* 67; 4 *Id.* 450.

2.    The instructions as a whole put the facts squarely before the jury.    The evidence sustains the verdict.    The notes were payable and paid in brick.    The parties bought the notes after maturity and were not innocent purchasers.

### STATEMENT BY THE COURT.

The Bank of Wynne & Trust Company, J. M. Davis, State Bank Examiner, in charge of said bank, and C. B. Bailey, trustee, instituted this action against H. H. Stafford and C. B. Wimmer, partners doing business under the firm name of the Wynne Brick Company, to recover on two promissory notes for $500 each, given by the defendants to the Bank of Wynne & Trust Company.    The first note was dated June 4, 1914, and was due sixty days after date.    The second note was dated July 8, 1914, and was payable on demand.

The defendants admitted the execution of the notes and plead payment.    During the pendency of the action, the plaintiffs filed an affidavit and bond for attachment, alleging that the defendant, H. H. Stafford, had removed from the State and was about to remove the firm's property from the State, not leaving sufficient property in the State with which to pay the firm's debts.    An order of attachment was issued and levied by the sheriff upon the

brick plant of the defendants. On the 29th day of April, 1916, the circuit court made an order for the sale of the property in the hands of the sheriff under attachment. The order recited that the property consisted of brick and brick making machinery and tools. The order directed the sheriff to offer said property at public sale in the manner pointed out in the order, and directed him to retain the proceeds of sale until the further orders of the court. Subsequently the defendants filed a cross-complaint, alleging that their property was wrongfully taken under said order of attachment and sale and that by reason thereof they were damaged in the sum of $2,108.

On the trial of the case the promissory notes sued on were introduced in evidence. They were plain promissory notes of the amounts and dates above set forth, and recited that the makers "promised to pay to the order of the Bank of Wynne & Trust Company, $500." The defendants were permitted to testify without objection, that it was understood between them and the cashier of the bank at the time the notes were given that the bank would take brick in payment of the notes; that it was agreed at the time the notes were made that they were to be paid by delivering brick at a hotel which it was contemplated would be built in the town of Wynne where the defendants were operating their brick plant, and that they were to receive $8 per thousand for their brick in payment of the notes. The defendants further testified that they manufactured three hundred thousand brick and had them in their kiln in the town of Wynne; that they sold seventy-four thousand of said brick to other parties, and when their notes to the bank became due they went to the cashier and told him they were ready to deliver the brick in payment thereof; that the brick were in the kilns at their plant. The cashier replied that the hotel would not be built and that he did not want the brick delivered there; that the cashier directed them to leave the brick where they were and said he would take them in payment of the notes; that no brick were ever set aside

for the bank or in any manner taken charge of by its agent; that they just remained in the kiln as they had done before.

H. H. Stafford, one of the defendants, in addition testified that in June, 1915, he went to Canada to visit his father, who was sick, and stayed there a while with him. He testified that his residence was at Wynne and that his absence from the State was only temporary and that he did not attempt to sell or dispose of any of the firm's property.

It was shown by the defendants that they made a kiln of three hundred thousand brick and only sold seventy-four thousand out of the kiln; that the brick were worth $8 per thousand; that they also had a brick machine worth $275; an engine worth $250; a boiler worth $75 and pallets and racks worth $800; that this property was all at their brick plant and seized under the writ of attachment and sold for the sum of $25. The same parties purchased it who purchased the assets of the bank at the sale thereof by the State Bank Examiner.

The cashier of the bank testified that he did not agree to take brick in payment of the notes, and said that no brick were delivered to him in payment therefor. It is also shown that no part of the notes had been paid except one item of $111, an item of $8, an item of $5 and an item of $30. The bank became insolvent and was placed in the hands of the State Bank Examiner. Its property was sold and bought in by C. B. Bailey, trustee, and all these parties were made plaintiffs to the action.

The jury returned a verdict for the defendant in the sum of $300. The plaintiffs have appealed.

Hart, J., (after stating the facts). Under the evidence as presented by the record the court should have directed the jury to find for the plaintiffs on the question of the payment of the notes. According to the testimony of the defendants themselves there was no delivery of

the brick in payment of the notes. The brick remained on the brick yard in the kiln in which they were burnt. There was no symbolical delivery or anything whatever to indicate that there had been a change of control or possession taken of them by the plaintiffs. So it may be said that under the undisputed evidence that there was no delivery of the brick to the plaintiffs.

(1) In the case of *McDermott* v. *Kimball Lumber Co.,* 102 Ark. 344, the court held, ''Where the property is of such a nature and so situated that actual delivery can be made, that is necessary; but where the property is too ponderous and bulky for an actual change of its possession, a symbolical or constructive delivery, as by placing on it outward *indicia* of a change of possession and ownership, will be as effective as an actual delivery.'' See, also, *Jones* v. *Burks,* 110 Ark. 108; *Lee Wilson & Co.* v. *Crittenden County Bank & Trust Co.,* 98 Ark. 379; *Chalmers & Son* v. *Bowen,* 112 Ark. 63. In the latter case the court held that the jury might find that there was a delivery because the shells had been piled up at a landing on the river bank ready for shipment and the parties had gone there and started to weigh out the shells and had quit because the shells were too wet; but the agent of the buyer took possession of the shells and it was agreed that they had been turned over to him. Here, as we have seen, the brick were left in the kiln and nothing whatever was done to show that the bank took possession of them. The parties were not at the brick kiln when the defendants say they agreed to turn them over to the bank and nothing whatever was done which would tend to show that the bank had taken possession of the brick.

(2-3) On the question of attachment the issue of whether or not it should be sustained was submitted to the jury. This was not reversible error, but inasmuch as the judgment must be reversed and the cause remanded for a new trial, we call attention to the fact that it is the proper practice for the court to determine the

issue raised as to the existence of grounds for attachment instead of submitting it to a jury. *Von Berg* v. *Goodman,* 85 Ark. 605. Where the attachment is discharged the court properly leaves it to the jury to assess the damages sustained by the defendant by reason of the attachment. Kirby's Digest, § 381.

For the error in submitting to the jury the question of the payment of the notes, the judgment must be reversed and the cause will be remanded for a new trial.