MARVIN *v.* BROOKS.

5-701                                          281 S. W. 2d 926

Opinion delivered June 20, 1955.

[Rehearing denied October 3, 1955.]

*Rex W. Perkins* and *E. J. Ball,* for appellant.

*James R. Hale,* for appellee.

ED. F. McFADDIN, Justice.   This case stems from the sale of a stock of groceries, by appellant Marvin to ap-

pellee Brooks; and is here on an appeal by Marvin (from a judgment quashing his writ of attachment), and a cross-appeal by Brooks (from directed verdicts which denied him damages and awarded Marvin a judgment for debt).

The facts are somewhat complicated. We refer to the parties by name. Marvin owned, or was interested in, grocery stores in Prairie Grove, Springdale and Fayetteville. Brooks had managed Marvin's Springdale store for several years on a salary of $60.00 per week. In February, 1953, and apparently without any previous negotiations, Marvin proposed to sell to Brooks the stock of groceries at Prairie Grove, which inventoried slightly in excess of $11,000.00. From the inventory there were deducted accounts payable of $2,302.00 and an overdraft at the bank of $1,098.00. These deductions left Marvin's equity at $7,664.08, to evidence which amount Marvin took Brooks' unsecured note. The maturity date of the said note presents a sharply disputed factual issue. It is undisputed, however, that Brooks was to draw $75.00 per week from the store for the services of himself and wife; and that he was to pay Marvin $135.00 a month rent for the fixtures and $60.00 per month rent for the building.

Brooks operated the store from February, 1953 to May, 1954 and had paid the bank overdraft and most of the accounts payable, when, without demand or notice, Marvin filed the present action against Brooks for $8,009.08 and also had the stock of groceries attached. The Sheriff sold the groceries *pendente lite*. Brooks resisted the attachment as well as the claim for debt, and also counter-claimed for damages for wrongful attachment. At the conclusion of the trial, the Circuit Court (1) found that Marvin had not established any grounds for attachment and ordered the proceeds of the attachment sale returned to Brooks; (2) directed the Jury to return a verdict for Marvin on Brooks' claim for damages for wrongful attachment; and (3) directed the Jury to return a verdict for Marvin for $7,934.08 on the debt sued on. Marvin has appealed from so much of the

Court's action as quashed his attachment; and Brooks has cross-appealed from the Court's action regarding the two directed verdicts.

I. *Marvin's Appeal in Regard to the Attachment.* When Marvin filed his action he filed his affidavit and bond for attachment and the Sheriff seized the entire stock of groceries. Marvin's claim to the right of attachment was two-pronged: (1) he claimed he was the vendor of the stock of groceries and entitled to attachment under § 34-2301 et seq., Ark. Stats.; and (2) he claimed he was entitled to attachment under the general attachment statute, which is § 31-101, Ark. Stats.

It was proper for the Trial Court to decide as to the existence of the alleged grounds for attachment, rather than to submit such issue to the Jury. See *Stair* v. *Jones,* 223 Ark. 882, 269 S. W. 2d 297, and *Ward* v. *Nu-Wa Laundry,* 205 Ark. 713, 170 S. W. 2d 381, and cases there cited. Furthermore the finding of the Circuit Court, as regards the grounds for attachment, is to be sustained if supported by substantial evidence. *Metcalf* v. *Jelks,* 177 Ark. 1023, 8 S. W. 2d 462; and *Wallace* v. *Wells,* 221 Ark. 750, 255 S. W. 2d 970, and cases there listed.

The Court was correct in denying Marvin's claim for attachment under § 34-2301, Ark. Stats. In *Borengasser* v. *Chatwell,* 207 Ark. 608, 182 S. W. 2d 389, we pointed out that a vendor's lien attachment could only reach the property actually sold by the vendor to the vendee. Here, Marvin was attempting to attach a stock of groceries that had been replenished and regularly exposed to sale over a period of 15 months from the date of the original transaction. Marvin made no effort to show that any article of groceries was other than one recently purchased by Brooks from some wholesaler; and there was ample evidence that Brooks had been purchasing from wholesalers all during the 15 months' period in which he had been running the store. The Court was correct in deciding against Marvin on this phase of the attachment claim.

The Court was also correct in deciding against Marvin in his claim for attachment under the general statute, § 31-101 et seq., Ark. Stats. Marvin's affidavit claimed that Brooks (1) was about to remove his property without leaving enough to satisfy the plaintiff's claim; (2) had disposed of his property with fraudulent intent to cheat, hinder or delay his creditors; or (3) was about to do so. While not stated in the words of the statute, it is evident that Marvin's affidavit was designed to contain the allegations as found in Items 6, 7 and 8 of the first subdivision of § 31-101. But Marvin's testimony in no wise sustained the affidavit. In fact, Brooks' attorney used Marvin as a witness to show that no grounds for attachment existed. We therefore conclude that the Court was entirely correct in finding and ordering that the attachment had been wrongfully issued.

II. *Brooks' Claim for Damages for Wrongful Attachment.* Our cases hold that an action for damages for wrongful attachment is a jury case (*Bank of Wynne* v. *Stafford,* 129 Ark. 172, 195 S. W. 397); but these cases necessarily mean that some evidence must be offered as to the elements of damages claimed. Here no such evidence is in the record; and in the absence of evidence the Court correctly directed a verdict for Marvin on this phase of the case.

III. *Brooks' Cross-Appeal on the Judgment for Debt.* As previously stated, the Court directed a verdict in favor of Marvin and against Brooks for $7,934.08 as the debt to Marvin. We hold that a fact question was made as to the time and manner of paying the debt, and that this issue should have been submitted to the Jury.

The evidence was in sharp dispute as to what the agreement was between Marvin and Brooks concerning the maturity of the original debt of $7,664.08. Brooks testified that no part of this amount was to be due until he had paid all of the accounts payable of $2,302.00, and that some of these had not been paid. One of these creditors made proof that its debt had not been paid. So, if

208

the $7,664.08 was not due, the action was premature; and a Jury question was made on that point.

Marvin testified that Brooks executed a note to him for the $7,664.08 and the note was introduced in evidence and stated that it was payable "$50.00 monthly, payable every six months, plus interest." But Brooks stoutly insisted—and other evidence corroborated him—that the monthly payment clause was placed in the note after he signed it and without his knowledge or consent. But against that insistence, Marvin established that the note merely evidenced the amount. The maturity of the debt presented an issue of fact.

Again, Brooks testified that Marvin agreed that if Brooks could not pay the $7,664.08, then Marvin would take back the store and cancel the debt. This defense also presented a Jury question.

Therefore, the judgment is affirmed on all issues except the judgment in favor of Marvin for the debt. As to that issue, the judgment is reversed and the cause is remanded. In view of such remand, we think it proper to mention that the record shows that Brooks made an assignment of some of the funds in the hands of the Sheriff but that Marvin superseded the entire judgment of the Lower Court. In view of Brooks' testimony that Marvin agreed to take back the stock and cancel the unpaid debt, we order that the Sheriff will hold all funds on hand until the Court below makes disposition of the same. The costs of this appeal are to be paid by appellant.