Argued February 20, reversed and remanded March 11, 1919.

# BURDICK *v.* TUM–A–LUM LUMBER CO.

### (179 Pac. 245.)

**Replevin—Complaint—Sufficiency.**

1. A complaint in replevin, seeking to recover possession of a warehouse, which recites no facts to take it out of the classification as real estate, was insufficient, and a demurrer thereto should have been sustained.

**Sales—Conditional Sale—Waiver of Stipulation—Effect—Notice.**

2. A conditional vendor, by accepting partial and overdue payments, waives strict compliance and cannot claim a forfeiture for nonpayment, without giving the purchaser reasonable notice and an opportunity to perform.

**Replevin—Nature of Property—Real or Personal.**

3. Where the owner of land and all parties interested treated a warehouse erected thereon as personal property, replevin will lie against one wrongfully taking possession of the same.

   [When and against whom replevin is sustainable, see note in 80 Am. St. Rep. 741.]

**Appeal and Error—Harmless Error—Admission of Evidence.**

4. In replevin for a warehouse, the admission in evidence of a computation made by plaintiff and his predecessor in interest of the amount due defendant upon the contract of sale, prior to tendering the amount, was not prejudicial to the defendant.

**Evidence—Opinion Evidence—Special Knowledge—Value.**

5. Where plaintiff testified that he was familiar with a warehouse building, knew its approximate size, had a similar warehouse built at about the same time, and as a banker had observed the volume of business passing through it, he was qualified to give an opinion as to its value and the value of its use.

**Trial—Instructions.**

6. An instruction covered by an instruction already given may be refused.

**Trial—Instructions—Burden of Proof.**

7. In replevin, an instruction that, if the property involved was in the rightful possession of defendant at the time of its sale to plaintiff by his predecessor in interest, then plaintiff cannot recover, was erroneous, as it cast the burden of proof upon the defendant.

**Replevin—Real or Personal Property.**

8. Though plaintiff in replevin for a warehouse has not been granted a right to use the land on which the building is situated for warehouse purposes, he may recover if the building is in fact personal property.

91 Or.—27

Trial—Instructions—Conformity to Pleadings.

9. Where, in replevin, defendant's answer contained no allegation of general or special ownership, a requested instruction as to defendant's rights as a conditional vendor was properly refused.

From Jefferson: T. E. J. Duffy, Judge.

Department 1.

This is an action in replevin. The complaint contains the following allegations:

"That on August 5th, 1915, the plaintiff was and now is the owner of and entitled to the immediate possession of the following described personal property located at Culver, Jefferson County, State of Oregon, to-wit:

"That certain warehouse building located on the certain Oregon Trunk Railroad Industrial lots, numbered thirty-seven (37) and thirty-eight (38) at said Culver; and also all tools, fixtures and equipment then located in said warehouse building above mentioned, said property being subject to certain liens and incumbrances and being of the net value of Nineteen Hundred and Ninety ($1,990.00) Dollars, after deducting the amounts due under said liens and incumbrances."

It is then alleged that on August 5, 1915, defendant wrongfully took possession of the warehouse, and the personal property therein, and wrongfully detains the same. Demand is alleged and damages in the sum of $1,000.

To this complaint a demurrer was filed, upon the ground that the complaint does not state facts sufficient to constitute a cause of action, which being overruled, defendant answered denying the material allegations of the complaint, "except that said property is subject to certain liens which are held by defendant in sums aggregating $3,177.00," and

"except that defendant took possession of the property described in the complaint, together with other

property thereto attached and forming a part thereof, on the thirty-first day of July, 1915, and ever since has been and now is in possession thereof."

The reply denies the first of the above-noted exceptions, and also denies that the defendant took possession on July 31, 1915. A trial to a jury was had wherein, at the conclusion of the taking of testimony, plaintiff asked leave to amend his complaint by alleging damages in the sum of $2,500, instead of $1,000, and to amend the prayer accordingly, which was allowed over the objection of defendant who excepted thereto. The trial resulted in a verdict for plaintiff, assessing his damages at $1,750, and defendant appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. George S. Shepherd* and *Mr. W. P. Myers,* with an oral argument by *Mr. Shepherd.*

For respondent there was a brief with oral arguments by *Mr. Denton G. Burdick* and *Mr. Jesse Stearns.*

BENSON, J.—1. The first assignment of error to which our attention is directed is, that the trial court erred in overruling the demurrer to the complaint. It will be observed that the complaint alleges that the warehouse is personal property, but recites no facts which would take it out of the classification as real property, where *prima facie,* it belongs. This court has held that such a pleading is fatally defective: *Enterprise M. & M. Co.* v. *Cunningham,* 84 Or. 319 (165 Pac. 224); *Van Orsdol* v. *Hutchcroft,* 83 Or. 567 (163 Pac. 978). The ruling of the lower court was therefore erroneous, and the judgment must be reversed.

In determining the final disposition of the case, it becomes necessary to consider, to some extent, the evidence which was submitted upon the trial. It appears from the record, that on October 11, 1912, one J. N. Hutchins, who was then the local manager of the defendant corporation, at Culver, secured from the Oregon Trunk Railway, a lease of lots 36 and 37 of the Culver Station grounds, at an annual rental of ten dollars. The lease recites that the lessee shall occupy the premises within three months, "for the purpose of erecting and operating a general warehouse," and it also provides that upon a termination of the lease "if the lessee shall fail to remove any material, building or property within the time prescribed in a notice of termination, the Railway Company may appropriate such property to its own use without compensation, or may remove the same at the cost of the lessee." Thereafter, Hutchins, H. C. Topping and J. O. Youngstrom entered into a partnership and proceeded to erect a warehouse upon the premises described in the above-mentioned lease. A large part of the materials used in its construction were purchased from the defendant. Thereafter Hutchins disposed of his interest in the firm to the other partners, who then entered into a contract with the defendant which was reduced to writing as follows:

"SALE CONTRACT.

"This contract made and entered into this 10 day of Feb. 1913 by and between the Tum-A-Lum Lumber Co., a corporation and H. C. Topping and J. O. Youngstrom, partners doing business under the firm name and style of H. C. Topping & Co.

"WITNESSETH:

"That for and in consideration of the sum of $820.79 to be paid as hereinafter set forth, first party contracts and agrees to sell unto second parties that cer-

tain Warehouse Building located on Rail Road Warehouse Lots Nos. 37 and 38 in Culver, Oregon.

"It is understood and agreed that the title to said warehouse is and shall remain in Tum-A-Lum Lumber Co. until the terms of this contract are fully complied with and the full sum of the purchase paid and upon full compliance with this contract and full payment of purchase price as herein set forth then the title is to immediately vest in second parties.

"It is understood and agreed that second parties are to insure and keep insured said building during the life of this contract in the sum of $700.00 and that said insurance shall be payable to first party as its interest may appear.

"Said sum of $820.79 shall be paid as follows: $50.00 Feb. 1st 1913, receipt whereof is hereby acknowledged, a like amount on Mar. 1st, 1913 and like amount on April 1st, 1913 and balance in monthly payments of $100.00 on the first of each and every month until the full sum is fully paid.   All deferred payments to draw interest at the rate of 10% per annum payable semi-annually.

"It is further agreed that first party is to take back any material now in platform which is not damaged, said material to be taken back full value as shown by invoices.

"It is fully understood that upon a breach of this contract by second parties first party shall have the right of immediate possession.

"Witness our hands this 24 day of Feb. 1913.
                    "TUM-A-LUM LUMBER Co.
                    "By OTTO A. PIERCE, Agt.
                         "H. C. TOPPING.
                         "J. O. YOUNGSTROM.
"Done in the presence of
           "W. S. RICE."

Subsequently Topping acquired the interest of his partner Youngstrom, continuing the business under the firm name of H. C. Topping & Co.   There is evidence to the effect that Topping paid under the terms

of the above contract, $50.00 at the date of its execution, $25.00 on March 14, 1913, and $40.00 on June 4, 1913, and nothing thereafter; that defendant accepted these partial and overdue payments, and never thereafter made any demand for a strict performance of the contract, and never gave plaintiff any notice that it would claim a forfeiture of possession by reason of delay in making the stipulated payments. In the latter part of July, 1915, Topping went to Portland for the purpose of procuring a statutory warehouseman's bond, leaving his son, Warren Topping, in charge of the warehouse. On July 31st, while Topping was still in Portland, the Bend Milling Company removed certain grain from the warehouse, with the assistance of Warren Topping, Otto Pierce, defendant's local manager, and others, and at that time made the assertion that there was a shortage in the amount of grain stored. Defendant's local manager thereupon insisted upon taking charge, and Warren Topping delivered the keys of the building to him. Pierce then communicated with Topping in Portland, by telephone, told him there was trouble in the warehouse, and asked him if he intended to return. Topping replied that he did, and started immediately, leaving the train at Metolius on Sunday morning, August 1st, where he consulted with plaintiff, who was president of the bank with which Topping did business. As a result of this conference, on Monday morning Topping executed a bill of sale to plaintiff of the warehouse and a power of attorney authorizing plaintiff, in his behalf, to make a tender to defendant of the balance due upon the conditional sale contract above set out. Having had these instruments recorded, plaintiff claims to have tendered to defendant, through its local manager, the amount due under the contract, which the agent re-

fused to accept.   On August 5, defendant served upon
plaintiff, and posted upon the building, a notice to the
effect that it had taken possession of the warehouse on
July 31st, in pursuance of the terms of the contract.
Defendant has continued in possession of the property
ever since.   On December 1, 1915, the Railway Com-
pany, owner of the land, canceled the lease to Hut-
chins and issued a new one to defendant upon like
terms, including the clause in regard to removal of
buildings.

2.  With evidence of this character in the record, the
court properly denied the motions for a nonsuit and
for a directed verdict, since, by the terms of the con-
tract, Topping, or his successor in interest, the plain-
tiff, was entitled to possession until a forfeiture
thereof should occur, and the jury might well find from
the evidence that defendant, by accepting partial pay-
ments and overdue payments, had waived strict per-
formance, in which event, it would not be entitled to
claim a forfeiture without having given the vendee
reasonable notice of its intention, and an opportunity
to perform: 13 C. J. 609; *Gray* v. *Pelton,* 67 Or. 239
(135 Pac. 755); *Graham* v. *Merchant,* 43 Or. 294 (72
Pac. 1088), and cases there cited.

3.  There is ample evidence to submit to a jury as-to
the nature of the property.   The owner of the land,
and all the other parties interested, appear to have
treated it at all times as personal property, and under
such circumstances replevin will lie: Cobby on Re-
plevin (2 ed.), § 365.

4.  Defendant assigns as error the ruling of the trial
court in permitting the witness N. A. Burdick to tes-
tify to a computation made by himself and Topping,
of the amount due to defendant upon the conditional
sale contract, preparatory to making a tender of the

amount. We are unable to discover any error therein, nor how it could work any harm to defendant.

5. It is contended that it was error to permit plaintiff to testify as to the value of the warehouse, because he had not qualified himself to give an opinion upon the subject. He testified that he was familiar with the building in a general way, knew its size, approximately, and had a similar warehouse, built at about the same time, with whose cost he was familiar. This we think qualified him as a witness, leaving the value of his testimony to be determined by the jury.

A similar assignment is based upon the testimony of the same witness upon the value of the use of the warehouse during the time since it had been in the possession of the defendant. His qualification as a witness upon this subject was founded upon his testimony that as a banker at Metolius, a town a short distance from Culver, he had been able to observe, to some extent, the volume of business passing through the warehouse in question. There was no error in the ruling of the court, for the objection is really directed to value of the evidence.

6. Over the objection of defendant the court gave certain instructions to the jury, to the general effect that the acceptance of inadequate payments, and the acceptance of overdue payments would reasonably create the impression that time was not of the essence of the contract, and that defendant could not thereafter enforce a forfeiture of the contract without giving some notice to the plaintiff or his predecessor in interest of such forfeiture or intention of forfeiture. The first of these instructions reads as follows:

"Now you are further instructed that where a party to a written contract orally agrees to extend time for its performance and puts the other party off of his guard,

he is estopped from taking advantage of the noncompliance with the terms of the writing, and the other party will have the extended time in which to discharge the modified agreement, and before such party is defaulted, such party must have some reasonable notice. By accepting some months later, and after the same was overdue, money to apply on the contract, if you find that the defendant did accept money from the plaintiff or his predecessor in interest, the defendant would thereby reasonably create the impression that time was not of the essence of the contract, and if you find that the defendant gave no written notice of any alteration of his intention to enforce his contract, it would not then enforce a forfeiture of the contract without giving some notice to the plaintiff or his predecessor in interest of such forfeiture or intention of forfeiture.''

We do not recall any evidence of any specific agreement to extend the time of performance, and since the other instructions covered the law of the subject as fully as plaintiff was entitled to have it, this instruction might well have been omitted.

The next portion of the charge in regard to which complaint is made is as follows:

''You are instructed that where a vendor in a contract calling for payment on designated dates did not require a strict compliance in making the payments as the same became due, but accepted payments of various amounts and at various times, not in accordance with the contract, then you are instructed that the plaintiff or his predecessor in interest would have a right to assume that defendant was not insisting on the strict enforcement of the contract, and that payment on the exact dates named in the contract would not be required. So if you find from a preponderance of the evidence in this case that the defendant was not insisting on a strict compliance of a contract according to its terms, then you are instructed that the vendor waived its rights to declare a forfeiture, and

he must give the purchaser reasonable and specific notice before he could declare such forfeiture, or take possession of the building.''

The law as here declared is in harmony with the declarations of this court in *Graham* v. *Merchant,* 43 Or. 294 (72 Pac. 1088); *Miller* v. *Beck,* 72 Or. 140 (142 Pac. 603); *Miles* v. *Hemenway,* 59 Or. 318 (111 Pac. 696, 117 Pac. 273).

Instructions numbered IV and V are to the same effect, and while they constitute a reiteration which is worthy of criticism, they are correct statements of the law.

7. Instruction numbered IX is as follows:

''You are further instructed that if you find from a preponderance of the evidence that this building in question was in the rightful possession of the defendant or some third party at the time of the execution of the bill of sale by H. C. Topping to the plaintiff herein, or that H. C. Topping by himself or his agent had delivered possession to defendant, then you should find for the defendant, as in such event the plaintiff cannot recover.''

This instruction, to the giving of which the defendant excepted, would be a correct exposition of the law, but for the fact that it casts the burden of proof upon the defendant, whereas, the plaintiff must prevail, if at all, upon the superiority of his own right of possession.

8. Defendant asked the court to instruct the jury to the effect that—

''if the plaintiff has not shown by the evidence that he has been granted a right to use the real estate upon which the building is situated for the purpose of a warehouse, then he would not have the right to obtain possession of the same.''

This request was properly refused, since possession of the building, if found to be personal property, under the evidence, is in all respects independent of any right to use the ground upon which it stands.

9. Defendant also requested that the jury be charged as follows:

"The title to personal property can be retained in the party when it is delivered to another party upon a conditional sale without any written agreement and without filing any lien the public records of the county and if the plaintiff purchases the property, he does so at his peril, and the same will be subject to the liens of the owner, even in the hands of an innocent purchaser."

This request is evidently based upon some evidence to the effect that after the execution of the conditional sale contract already referred to, Topping enlarged the building, securing materials from defendant under a parol agreement that title to the additional structure was to be held by defendant upon terms similar to those of the original contract. The instruction was properly refused, since the defendant's answer contains no allegation of either general or special ownership, and it is therefore not entitled to any recovery based thereon: *Guille* v. *Wong Fook*, 13 Or. 577 (11 Pac. 277).

The cause will be reversed and remanded for a new trial, with permission to plaintiff to apply to the trial court for leave to amend the complaint.

Reversed and Remanded.

McBride, C. J., and Burnett and Harris, JJ., concur.