Submitted on briefs February 2, reversed April 11, 1922.

## ENDICOTT v. DIGERNESS.

(205 Pac. 975.)

**Quieting Title—Equity has Jurisdiction in Suit as to Personal Property on Answer to Merits and Prayer for Equitable Relief.**

1. Equity has jurisdiction over a suit to quiet title to personal property where the defendant answered to the merits and prayed for equitable relief.

**Action—Suing on One of Two Separable Provisions for Enforcement of Contract is not Splitting Cause of Action.**

2. Where a contract for the sale of a sawmill provided that collections for lumber sold should be made through a designated bank which should credit the seller with a stated sum on all lumber sold, but that the entire purchase price must be paid within one year regardless of the quantity of lumber sold, the provision for collection through the bank was a separate remedy from the provision for collection by retaking the property under the reserved title, so that the bringing of an action by the bank for the specified payments on the lumber actually sold did not waive the seller's right to hold the property under his reserved title until the balance of the purchase price was paid.

**Action—Rule Against Splitting Cause of Action may be Waived by Debtor.**

3. The rule against splitting a cause of action is for the protection of the debtor, and he may waive its benefits by expressly or impliedly consenting to the institution of separate actions upon a single demand.

**Sales—Remedies of Conditional Seller Stated.**

4. A conditional seller of personal property after default by the buyer may treat the contract as rescinded and recover his goods, which defeats any other remedy; may treat the contract as in force but broken, and retake the goods and sue for damages for the buyer's breach; may waive a return of the goods and recover from the buyer the agreed price; or may, in some cases, if the contract permits it, without rescinding, resume possession of the goods, hold them subject to the contract, and enforce performance by the buyer, who, upon such performance, will be entitled to restoration of the goods.

**Sales—Recovery of Portion of Price Payable from Sale of Products Held not an Election Against Claim and Title.**

5. Where a conditional sale of a sawmill provided for payment of a portion of the purchase price from the sale of lumber, the receipt by the seller of such portion, which was collected by an action in the name of the bank authorized by the contract to collect it, was not waiver of the seller's right to retake possession of the sawmill on the buyer's default in paying the balance.

**Sales—Buyer can have Possession After Retaking by Seller Without Rescission by Paying Balance Due.**

6. Where the conditional seller of a sawmill retook possession of the property, as he was authorized to do under the contract, without rescinding the contract but to enforce payment of the balance of the purchase price, the buyer, or those holding under him, is entitled to possession of the mill upon compliance with the terms of the contract.

**Sales — Allowing Buyer Additional Time to Pay Does not Waive Reserved Title.**

7. A conditional seller of goods does not waive his reserved title by allowing the buyer an additional time within which to pay the balance due on the purchase price.

**Execution—Subsequent Buyer at Execution Held not Prejudiced by Acts of Conditional Seller.**

8. Where a conditional seller of a sawmill had retaken possession of the mill without rescinding the contract but to force payment

---

4. Rights and remedies of seller under conditional sale where buyer defaults in payment of purchase price, see notes in 133 Am. St. Rep. 563; 1 Ann. Cas. 268; 16 Ann. Cas. 1057; Ann. Cas. 1917D, 464; 32 L. R. A. 455; 38 L. R. A. (N. S.) 891.

6. On effect of retaking of property by seller on the rights and remedies of the parties to a contract of conditional sale, see note in L. R. A. 1916A, 915.

of the balance due under his contract, a buyer of the mill at a sale under execution against the original buyer, which sale was expressly made subject to the rights of the original seller, was not prejudiced by the acts of the seller in availing himself of other remedies to recover a part of the purchase price.

**Sales—Whether Conditional Seller has Waived Right to Retake Possession is Question of Fact.**

9. No general rule in regard to waiver by a conditional seller of his right to retake possession of the goods to be laid down other than that such waiver may be inferred whenever the conduct of the seller is inconsistent with the idea that he still expects to enforce his right to return of goods, and whether such is the case or not is a question of fact.

**Sales—Possession Retaken by Conditional Seller Gives Title Good Against Everybody.**

10. Where the conditional seller of goods retook possession under his reserved title before any other right or lien attached to the goods, his title was good against everybody:

**Sales — Conditional Seller has Right to Possess After Buyer's Default.**

11. The right of possession of personal property is, as a general rule, in a person holding the legal title, and, though a conditional sale contract in which the seller reserved title usually contains a provision permitting the buyer to take possession until default, the seller becomes entitled to possession upon default until the buyer redeems.

**Sales — Conditional Seller Brought into Equity by Subsequent Buyer can have Conditional Contract Foreclosed.**

12. Where the conditional seller of a sawmill was brought into equity by a subsequent buyer of the mill at sale under execution against the original buyer, the seller can have his contract foreclosed in such suit, regardless of whether such foreclosure was necessary.

From Marion: GEORGE G. BINGHAM, Judge.

In Banc.

This suit involved the ownership of certain personal property consisting of sawmill machinery and tools. From a decree rendered in favor of plaintiff defendant appealed.

The facts in the case are these: On May 6, 1919, defendant, N. Digerness, entered into a written contract with P. E. Brown, F. H. Brown and E. L. Comstock whereby defendant agreed to sell and these persons agreed to purchase a sawmill outfit

known as the Taylor sawmill at the price of $5,500, $500 of which was paid at that time. In regard to the payment of the balance and title to the property the contract stipulated as follows:

"Collections for all lumber sold shall be made through the First National Bank of Silverton, Oregon, and the purchasers agree to make said collections in said manner; the Bank is hereby authorized to deduct, from the price received for each and every thousand feet so collected for, the sum of $2 per thousand feet of lumber, and to apply same, in said Bank to the credit of said Digerness; a copy of this contract is made and delivered to the Bank and all collections, so made, shall be, by said Bank, credited on the note of the purchasers in the sum of $5,000 of even date herewith, as evidencing the unpaid balance of said purchase price, and such indorsements shall, in the absence of mistake, be deemed to represent the amount paid hereunder; provided, however, that the whole amount of said note shall be paid on or before one year from this date whether or not sufficient lumber has been sold to cover same and the interest thereon.

"Title to said property shall remain in the seller until the full amount of the said purchase price is paid.

"The purchasers agree to make payments as herein and in said note provided."

Thereafter the buyers transferred their interest in the contract to the Comstock-Brown-Alm Company, a corporation. The company operated the mill until May 15, 1920, when it was partially destroyed by fire. The portions of the mill not consumed by the fire are involved in this suit. At the time the mill was burned the Comstock-Brown-Alm Company had manufactured and sold 637,000 feet of lumber, but had paid only $191.28 on the contract leaving $1,082.72 as balance due on the sawing arrangement. Prior to the time

the balance of the note became due the Comstock-Brown-Alm Company applied to defendant for an extension of time of payment of the balance of the note, as they were unable to obtain cars to ship the lumber, and the matter was allowed to stand for an indefinite time. About two weeks after the fire, the officers of the Comstock-Brown-Alm Company being unable to obtain funds with which to rebuild the mill, told the defendant that they could do nothing and he could have the mill. Digerness thereupon took possession of the personal property and placed a keeper in charge, to hold as security for the balance of the purchase price.

In August, 1920, the defendant, Digerness, received $1,500 on an insurance policy on the property. On October 12, 1920, one H. Steinbock obtained a judgment in an action against the Comstock-Brown-Alm Company for the sum of $80.50 and costs, and upon execution issued on such judgment the sheriff of Marion County, Oregon, sold to Steinbock the personal property involved in this suit for the amount of his judgment. The sale was made subject to the claim of N. Digerness. Afterwards Steinbock's interest in the property was transferred to plaintiff.

This suit was instituted by plaintiff to quiet his title to the personal property. The defendant answered alleging that he was the owner and in possession of the personal property involved, setting forth the contract above referred to and that $3,384.86 was unpaid on the purchase price mentioned in the contract, claiming the personal property as security for such balance, and prayed that the contract be foreclosed and the personal property be sold to satisfy defendant's claim. The plaintiff in his reply by way of estoppel set forth the contract mentioned, the assign-

ment to the bank and the institution of a cause of action on June 12, 1920, for the payment of $2 per thousand feet for the lumber manufactured by the Comstock-Brown-Alm Company aggregating $1,082.72 after deducting the payment thereon, and the judgment therefor in favor of the First National Bank of Silverton, Oregon, as plaintiff, and against the Comstock-Brown-Alm Company, and that such judgment had become final.

REVERSED AND DECREE ENTERED.

For appellant there was a brief over the name of *Mr. Custer E. Ross.*

For respondent there was a brief over the name of *Mr. Walter C. Winslow.*

BEAN, J.—1. Defendant having answered to the merits and prayed for equitable relief, a court of equity has jurisdiction of the cause. Plaintiff proceeds upon the contention that defendant is estopped from asserting that he is the holder of the title to any of the property in controversy; that he waived title to the property by causing the action at law to be commenced by the First National Bank of Silverton against the Comstock-Brown-Alm Company for the recovery of the $2 per thousand feet of lumber manufactured and sold under the terms of the contract. This was after defendant had taken possession of the mill. It is also contended by the plaintiff that the prosecution of the action by the bank, as the assignee of the defendant, was splitting an entire cause of action.

2. It will be remembered that the contract provided that payment should be made to the First National Bank of Silverton, Oregon, for lumber manufactured

by the mill and sold, at the rate of $2 per thousand feet. While this amount was to be credited on the note of the purchasers, the contract clearly provides for the collection of the $2 per thousand feet by the bank, and as far as the remedy availed of by the action, the Comstock-Brown-Alm Company and its assignors, by the terms of the contract, consented to the bringing of such action. Such proceeding was a mere carrying out of the contract.

3. The rule against splitting a cause of action is for the protection of the debtor. Therefore he may waive its benefits by expressly or impliedly consenting to the institution of separate actions upon a single demand: 1 C. J., p. 1109, § 280. However, only one action has thus far been instituted by the defendant, or in his behalf upon the contract or note. The rule against splitting by assignment is inapplicable where the assignment like the one in the present case is of a separate and distinct cause of action: 1 C. J., p. 1110, § 283; *Krebs Hop Co.* v. *Livesley*, 59 Or. 574, 581 (114 Pac. 944, 118 Pac. 165, Ann. Cas. 1913C, 758).

4. The rule laid down in 1 Mechem on Sales, Section 615, which has been adopted and followed by this court is, that where the vendee in a contract of conditional sale is entitled to the possession of the personal property so sold until default, the vendor who would take advantage of a default has a choice of remedies.

"1. He may treat the contract as rescinded, upon the default of the buyer, and recover his goods. If he does this, he has no other remedy.

"2. He may treat the contract as in force but broken by the vendee; he may retake and keep the goods as his own, and, if the contract imposed upon the buyer an absolute obligation to buy, he may recover of the buyer damages for the breach of his

103 Or.—36

agreement to buy and pay for the goods. The measure of damages will ordinarily be the difference between the contract price and the market value of the goods at the time and place of default.

"3. He may, if the contract contains an unconditional agreement on the part of the vendee to pay, waive a return of the goods, treat the contract as executed on his own part, and recover from the vendee the agreed price of the goods.

"4. He may, in some cases, if the contract permits it, without rescinding or terminating the contract, resume possession of the goods, hold them subject to the contract, and then enforce performance by the vendee, who, upon such performance, will be entitled to restoration of the goods."

See *Herring-Hall-Marvin Co.* v. *Smith,* 43 Or. 315 (72 Pac. 704, 73 Pac. 340); *McDaniel* v. *Chiaramonte,* 61 Or. 403, 408 (122 Pac. 33); *Francis* v. *Bohart,* 76 Or. 1, 5 (143 Pac. 920, 147 Pac. 755, L. R. A. 1916A, 922). In some states a choice of only two remedies is given such a vendor, and in others an election of only three remedies is accorded the seller upon the breach of a contract of conditional sale by the purchaser, leaving out the fourth remedy mentioned above.

It is claimed by defendant that under the fourth remedy mentioned he took possession of the goods with the assent of the vendee, and holds them subject to the contract; and that the enforcement of the performance by the vendee in the action brought by the bank was within his rights. It is conceded that the commencement of any litigation that can proceed only on the theory that title has passed to the purchaser on waiver by the seller constitutes an election which the seller cannot revoke: *Francis* v. *Bohart,* 75 Or. 1, 6 (143 Pac. 920, 147 Pac. 755, L. R. A. 1916A, 922); *Whitney* v. *Abbott,* 191 Mass. 59 (77 N. E. 524);

*Bierce* v. *Hutchins,* 205 U. S. 340 (51 L. Ed. 828, 27 Sup. Ct. Rep. 524, see, also, Rose's U. S. Notes).

Does recovery of the goods bar an action for the price? The authorities on this question are apparently not harmonious. This seems to be on account of there being various forms of conditional sales contract. It is stated in 1 Mechem on Sales, Section 621, thus:

"But does it necessarily follow that a recovery of the property destroys the consideration for the contract, or in effect rescinds it? As has been seen before, these agreements may usually be separated into two parts—an executory agreement to sell, and a bailment of the property. Either of these is a valid contract and may stand alone. May not the latter be withdrawn without necessarily defeating the former? Clearly it may be by express terms of the contract; but without express provisions to that effect, may not the contract be so interpreted as to permit of this result? This must depend upon the contract. If by a fair interpretation of the contract the seller may, upon default in payment or otherwise, have a right to resume possession, may he not do so without rescinding, but holding the property still subject to the contract, ready to be restored if payment is made?"

5. Referring to the general features of the contract in question, the vendor agreed to sell the property on condition that the vendee would pay the purchase price within one year. The vendee agreed to purchase the same, and absolutely promised to pay as stipulated. Title to the property was to remain in the seller until the full amount of the purchase price was paid. The provisions of the contract contemplated that the vendees should operate the mill and make collections for lumber sold through the bank and pay the seller $2 per thousand feet for each

thousand feet sold and collected. It was not pro-
vided by the contract that the purchasers should
retain and use the machinery for a year until the
note was due, but in order that the seller would have
some compensation for the use and wear of the mill
it was agreed that the $2 per thousand should be
paid as soon as collected. The contract is unlike that
considered in the case of *Francis* v. *Bohart,* 76 Or. 1
(143 Pac. 920, 147 Pac. 755, L. R. A. 1916A, 922),
where upon a breach the plaintiff had a single "cause
of action arising out of a contract single in its terms."
In the present case the contract for the payment for
the $2 per thousand is separate and distinct from the
note given for the purchase price. When the 637,000
feet of lumber was manufactured by the use of the
sawmill and sold and the proceeds thereof collected,
there was due to the seller or his authorized collector,
the bank, the sum of $1,274. The Comstock-Brown-
Alm Company, the assignee of the purchasers, recog-
nized that this amount was due by the payment of
$191.28. The action of the bank for the collection
of the balance of the $2 per thousand was not incon-
sistent with the right of Digerness to insist that the
title to the machinery still remain in him. When the
$2 per thousand became due under the terms of the
contract Digerness or his assignee was entitled to
receive the same, whether the balance of the purchase
price was ever paid and the title to the goods passed
to the Comstock-Brown-Alm Company, or not. The
voluntary payment by the company did not change
the title to the personal property. If the company
had voluntarily paid all of the $1,274 when due the
title to the machinery would not have vested in it, but
would have remained in Digerness until the full pur-
chase price was paid. His conduct, therefore, in

attempting the enforcement, by an action of law, of the payment of the balance of the $2 per thousand was not inconsistent with the position that the title to the sawmill was not yet in the purchaser.

6. By the terms of the contract the purchasers gave him the right to have the $1,274 and still keep his title until the note was paid. The defendant's authorizing the bringing of the action was not an election between two inconsistent remedies, but was an act perfectly consistent with his claim to retain his title. It was all in strict compliance with the stipulation of the contract. A large part of the contract price still remains due, and the defendant has the right to retain the possession of the personal property which he had taken prior to the action. He in no way thereby forfeited his right to retain such possession. The case comes fairly within the fourth remedy above referred to, which has long been sanctioned by this court. The purchasers, or those holding under them, are entitled to the possession of the personal property upon compliance with the terms of the contract: *Haynes* v. *Temple,* 198 Mass. 372 (84 N. E. 467); 20 C. J., p. 9, § 8; *International Harvester Co.* v. *Bauer,* 82 Or. 686 (162 Pac. 856).

In *Tufts* v. *D'Arcambal,* 85 Mich. 185 (48 N. W. 497, 24 Am. St. Rep. 79, 12 L. R. A. 446), referred to in 1 Mechem on Sales, Section 622, a case like the one at bar, we read:

"The contract provides expressly that the title to the property shall continue to remain in plaintiff until the apparatus is paid for, and that, in case of the nonpayment of either of the notes at maturity, the plaintiff shall have the right to take possession of the property; but it contains no provision that such act shall operate as a rescission of the contract or a forfeiture of the payments thereon. The reduction of the property to possession by the plaintiff

does not excuse performance by defendant, as defendant has the right, upon payment of the amount due, to a return of the property. Plaintiff had the right, under the express conditions of the contract, to secure himself by taking possession, and the exercise of this right under the contract did not entitle the defendant to rescind the contract, or to a recovery of the amount paid, or to a delivery to him of the unpaid notes; neither did it give him any lien upon the property for the amount paid by him.''

The case of *Ratchford* v. *Cayuga County etc. Co.*, 217 N. Y. 565 (112 N. E. 447, L. R. A. 1916E, 615), arose between a plaintiff claiming title under a conditional sales contract and a subsequent mortgagee of the property from the conditional vendee who claimed that title had passed by waiver. The conditional sales contract provided for the payment of the purchase price in installments. The last installment being unpaid, the seller brought an action to recover same and had a judgment. The mortgagee then brought the action to foreclose the mortgage held by him, and thereupon the present plaintiff brought replevin for the goods, and the court permitted a recovery, saying:

''The question depends for its answer on the law of election of remedies. Where two inconsistent remedies, proceeding upon irreconcilable claims of right, are open to the suitor, the choice of one bars the other. But to have that effect, the remedies must be inconsistent. We find no inconsistency here. The contract says that the title is to remain unchanged until the price is paid in cash. The vendor has the right to receive the price and brought an action to get it. The judgment preserves the obligation of the vendee's promise to make payment, but puts it in another form. There is no inconsistency between an attempt to get the money, and a reservation of title if the attempt is not successful. In asserting title

the vendor does not treat the contract as void in its inception. *Elterman* v. *Hyman,* 192 N. Y. 113 (84 N. E. 937, 127 Am. St. Rep. 762, 15 Ann. Cas. 819); *Davis* v. *Rosenzweig Realty Operating Co.,* 192 N. Y. 128 (84 N. E. 943, 127 Am. St. Rep. 890, 20 L. R. A. (N. S.) 175). The contract is treated as subsisting and enforced according to its terms.

" * * The vendor sued for the installment in default, and nothing else. In doing so it did not renounce its title any more than it would have done by the acceptance of a note."

In 20 C. J., page 12, Section 9, the rule is stated as follows:

"All actions which proceed upon the theory that the title to property is in plaintiff are inconsistent with those which proceed upon the theory that title is in defendant. But there is no inconsistency between different remedies all of which are based upon claim of title to property in plaintiff, or all of which are based upon the affirmance of title in defendant."

In *Bent* v. *Barnes,* 90 Wis. 631, at page 634 (64 N. W. 428), we read:

"It is said that the plaintiff, having brought a replevin action and obtained partial relief, cannot maintain this action, because the remedies are inconsistent. We perceive no inconsistency. Both actions are founded on the same basis, namely, the ownership of the lumber by the plaintiff. There is no inconsistency between any of the claims made in the replevin action and the claims made in this action. The defendant is in no way prejudiced by the failure of the plaintiff to obtain full relief in the replevin action and by her resort to this action for the balance."

See *Hobart Electric Mfg. Co.* v. *Rooder,* 121 N. Y. Supp. 274; note, L. R. A. 1916A, 925.

7. Defendant at all times has attempted to enforce the contract, not to rescind it. By allowing the

Comstock-Brown-Alm Company additional time at its request to rebuild the mill and make payment of the balance of the note, he did not evince an intent to waive his title to the mill machinery.

8. The plaintiff was in no way prejudiced by the position of the defendant. He knew when he became the purchaser at the execution sale, of the claims of the defendant; he knew or could have easily ascertained the amount that was unpaid to defendant on his claim against this property. The sale upon execution was made subject to the claim of defendant.

9. No general rule in regard to a waiver by such a seller can be laid down, other than that a waiver may be inferred whenever the conduct of the conditional vendor is inconsistent with the idea that he still expects to enforce a return of the goods if the conditions are not performed. Whether such is the case or not is a question of fact: 1 Mechem on Sales, § 624.

10. The contract under which the machinery is claimed is general in its terms and does not specify the manner of taking possession of the personal property in case of default. The position of the plaintiff seems to ignore the fact that possession of the personalty was taken by the defendant prior to the time of the levy of the execution resulting in a sale under which plaintiff claims. The position of Digerness is analogous to that of a mortgagee. If a mortgagee takes possession of mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody: Jones on Chattel Mortgages (4 ed.), § 178.

11. The right of possession of personal property is, as a general proposition, in the person holding the legal title. This person, in the case of a contract of conditional sale, is the vendor. The contract usually

contains some clause which, like the one in question, at least by implication gives the vendee the possession of the property until he defaults in payment. After default the vendor is entitled to possession until the vendee redeems: Griffin and Curtis, Chattel Mortgages and Conditional Sales (3 ed.), p. 215, § 7. Under the circumstances of this case the plaintiff in the writ of execution levied on the property in question, could sell only the interest of the Comstock-Brown-Alm Company in the property, and could not sell the interest of the defendant therein.

12. Without deciding whether it is absolutely necessary, as enunciated in the case of *McDaniel* v. *Chiara Monte, supra,* the defendant having been brought into court of equity by the plaintiff, is entitled to have the conditional contract of sale foreclosed.

The plaintiff's assignor attempted to sell the property in question to satisfy an execution for the sum of $99, knowing, or having reason to know, that the defendant had title to the property and was entitled to the possession thereof until a claim much larger than plaintiff's should be satisfied. The equities are with the defendant.

The decree of the lower court will be reversed and one entered in accordance herewith.

REVERSED AND DECREE ENTERED.