Argued November 7; affirmed November 28, 1933;
rehearing denied February 6, 1934

## MATHERS *v.* WENTWORTH & IRWIN, INC.

### (26 P. (2d) 1088, 29 P. (2d) 516)

*Will H. Masters,* of Portland, for appellant.

*George P. Winslow,* of Tillamook, for respondent.

BAILEY, J. On May 20, 1931, the defendant sold to the plaintiff on a conditional sales contract a motor truck for the sum of $3,789. A payment of $1,157 was

credited on the purchase price and the balance of $2,632 was to be paid in 18 equal monthly instalments. This contract was assigned by the defendant to the Yellow Manufacturing Acceptance Corporation. Later, about June 11 of the same year, the defendant sold to the plaintiff on a conditional sales contract a trailer for the sum of $1,200, to which was added $64 for certain charges. Plaintiff was credited with a payment of $400 and the balance was to be paid in 12 equal monthly instalments. Time was made the essence of these contracts. Plaintiff paid 10 instalments on the truck contract and only three monthly instalments on the purchase price of the trailer.

██ During the month of June, 1932, certain correspondence was had between the plaintiff and the defendant relating to the refinancing of the purchase of the truck and trailer, and on June 13 the defendant wrote to the plaintiff stating that there was a balance of $1,169.80 unpaid on the purchase price of the truck and that after deducting the $150 due that month from plaintiff there would remain a balance of $1,019.80. At that time the balance of the purchase price of the trailer was $666.57, making a total of $1,686.37 unpaid on the purchase price of both truck and trailer, not including the $150 still due as an instalment on the old contract, the original purchase price of the two being $5,053. To this total remaining unpaid was to be added an item of $168 for refinancing charges.

On June 13 the defendant mailed to the plaintiff a new conditional sales contract, dated June 20, 1932, covering both the truck and the trailer and calling for the payment of $1,854.37 in 12 equal monthly instalments of $154.53, the first instalment to be paid on July 20, 1932. Time was made the essence of this contract; and the title to the vehicles was to remain in

the seller until the full purchase price was paid. The plaintiff also was to pay $150 to be applied on the prior truck contract. At the time this new conditional sales contract was mailed to the plaintiff by the defendant, the latter stated in a letter accompanying it that there would no doubt be a small refund due the plaintiff on the refinancing charges incidental to the original contract, and that as soon as that refund was received by the defendant credit would be given to the plaintiff. This contract, dated June 20, 1932, was signed by both the defendant and the plaintiff.

On June 28 the plaintiff mailed to the defendant a check for $150 which was to be applied on the old contract. On or about August 5, 1932, in a telephone conversation with the defendant the plaintiff was advised that the amount of refund was not known to the defendant, and it was then suggested by the plaintiff that he mail to the Yellow Manufacturing Acceptance Corporation, to which concern the new conditional sales contract had been assigned, a check for $100 to apply on the July 20 payment; and on August 5 the plaintiff did mail to the acceptance corporation a check for that amount. In a letter accompanying the check he stated: "This payment should be for $154 due on the twentieth of each month, except that the first payment was to have a credit of some $50 or more, on account of refinancing." In answer to this letter the acceptance corporation acknowledged receipt of the check, stated that the refund had been figured to amount to $18.56, and asked for a check in the sum of $35.97 for the unpaid balance of the monthly instalment then due.

On August 18, 1932, the defendant wrote to the plaintiff, reminding him that there was still a balance of $36.74 due on the July instalment and asking the

plaintiff to mail a check to the defendant immediately for that amount, adding: "As you no doubt know, there is another payment due on the twentieth of this month, and the finance company will not permit truck contracts to run over 30 days past due. We appreciate that you are doing the very best you can, but we must insist that this contract be kept in a current condition." Four days later the acceptance corporation wrote to plaintiff, stating that there was a balance of $36.14 due on the July instalment and that there was a payment of $154.53 due August 20. Attention was directed to two payments which were declared to be past due, a balance of $36.14 for July and the entire August instalment of $154.53. It was then stated that after crediting plaintiff with $100 paid by check August 5 there was still a balance due on the July instalment. The letter further stated: "We trust that the amount on which your account was credited is now clear to you and that you will send us your check to cover at least the balance of the July instalment, by return mail. So that the condition of your account will comply with the terms of your contract, will you please give this matter your immediate attention." On the following day the acceptance corporation notified the plaintiff that it had, according to plaintiff's request, placed insurance on the truck and trailer.

On August 26, 1932, the defendant mailed a letter to the plaintiff calling attention to the fact that the defendant had received a letter from the acceptance corporation stating that the plaintiff had not taken care of the balance of $35.97 on the first instalment of the rewritten contract, also that the August 20 instalment had not been paid. The plaintiff was asked to make arrangements upon receipt of that letter to send to the defendant a check for the balance of the July

instalment and to cover the August instalment. The acceptance corporation wrote to the plaintiff, August 31, calling attention to the delinquencies in July and August instalments, stating that the plaintiff was no doubt familiar with the acceptance corporation's credit regulations, "which require this account to be on a current basis at all times", and asking the plaintiff to send a remittance to it "within the next few days, to retire these delinquencies". The defendant wrote to plaintiff, September 9, expressing great surprise over having been advised by the acceptance corporation that the plaintiff had not paid the balance of the July instalment and had allowed the August instalment to become delinquent. Defendant further advised the plaintiff that it was impossible to continue the contract in its present condition and asked that he arrange, upon receipt of the letter, to send a check for the delinquent instalments, otherwise "it will be necessary for us to protect the Y. M. A. C.'s interest in the equipment as per the letter we have just received from them". It was then stated: "We feel it is well worth your while to give this matter your serious consideration and we shall expect to hear from you within a reasonable length of time." September 13 of the same year the acceptance corporation wrote to plaintiff, calling attention to the two payments past due on the contract and the maturing of another payment on September 20. "This unsatisfactory situation", stated the letter, "warrants your immediate attention with a view to placing the account on current basis again, as we will be compelled to enforce our rights under the contract, otherwise. Kindly mail us your check at once."

Defendant wrote to the plaintiff, September 17, calling attention to the condition of the acceptance corporation's contract and stating that it was impos-

sible for the contract to be continued in "its present condition". In this letter the defendant also stated that it had definite instructions from the acceptance corporation as to what that concern expected defendant to do in the matter; that there were due the balance of the July instalment and all the August instalment; that another payment would be due the following Tuesday; and that the corporation had instructed its agent at Eugene to go on the Monday after the letter was written and either obtain a check for the July and August instalments or "make a repossession of both the truck and the trailer". This letter was mailed some time on Saturday and was not received, according to the undisputed evidence, until about four o'clock Monday afternoon, after the truck and trailer had been taken away by the defendant.

On Monday, September 19, 1932, the defendant's agent at Eugene went to Tillamook, and about 10 or 11 o'clock that morning appeared at plaintiff's office, in the latter's absence, and demanded either payment of the July and August instalments or possession of the truck and trailer. Payment was refused and the defendant's agent took the truck and trailer to Portland.

Thereafter, on September 22, the defendant wrote to the plaintiff, stating that if plaintiff did not within the next 10 days "retire the delinquent instalments we hold on this truck and trailer, we will offer same for sale, and if we do not realize sufficient money from the sale of this truck and trailer to cover your note, less the selling expenses, we will of course be compelled to ask you to take care of the deficiency". On the same date the acceptance corporation telegraphed to plaintiff that there was $347 past due on its contract and that the corporation must receive full payment at

once or it would take action to protect its interest. Under date of September 26 the acceptance corporation mailed notice to the plaintiff stating that there was $347 due, representing August and September instalments and the balance of the July instalment; and under date of October 10 defendant wrote to plaintiff, calling attention to the October instalment.

The plaintiff did not answer any of the communications received by him between the time of the execution of the last conditional sales contract and September 19, 1932. There was testimony, however, to the effect that he had been attempting to raise money to pay the delinquent instalments and that he was ready, willing and able to procure enough money to pay them, if he had been given a reasonable length of time to do so.

The appellant in its reply brief says, "there is only one question in the case, and that is whether there was any waiver of the terms of the contract by the appellant", and contends that there was no waiver by it of the provisions thereof which made time the essence of the contract.

This court in *Samuels v. Mack-International Motor Truck Corporation,* 128 Or. 600 (275 P. 596), in referring to the provisions of a conditional sales contract requiring strict performance thereof by a purchaser, said:

"A wrongful rescission was had if the defendant, after having waived strict performance of the contract as to payments, declared a forfeiture and repossessed the trucks without giving the plaintiff definite and reasonable notice that unless amount due on contract was paid it would so act. A waiver is the relinquishment of a known right and may be established expressly or by implication. The right to declare a forfeiture for failure to comply strictly with the contract

in making these monthly instalment payments is for the benefit of the seller and unquestionably may be waived by him.''

The court then proceeded to quote with approval from 1 Mechem on Sales, § 609, as follows:

" 'The law has no interests of its own to subserve in insisting upon forfeitures or other results of defaults. The remedies it gives are for the benefit of the vendor, and he may waive them if he will. He may do this, moreover, either expressly or by implication, and as the results of default more often work hardship to the buyer than to the seller, the law looks with complacence at least upon those acts of the vendor which may fairly be construed as indicative of his intention not to insist upon a forfeiture of the buyer's rights. If, therefore, the seller, notwithstanding the default, does not avail himself of his appropriate remedy, but so acts as to reasonably warrant the inference that he regards the buyer's rights as still subsisting, he will be deemed to have waived the default, and he will not be at liberty to declare a forfeiture until he has in some way put the buyer, whom he has thus misled, in the attitude of a fresh default'.''

In *Johnson et al. v. Berns et al.*, 111 Or. 165 (209 P. 94, 224 P. 624, 225 P. 727), Mr Justice Burnett, after discussing some of the earlier Oregon decisions on the subject before us, said:

"The principle is that all the terms of the contract are binding upon all the parties thereto and that if the vendor, for whose benefit the stipulation about time being of the essence of the contract is made, would insist upon it, he must act promptly upon that provision so that any indulgence upon his part will amount to a nullification of that feature of the covenant. In effect, by operation of law upon his indulgence, a new contract is brought into existence for the time being, from which that clause is absent, and it so remains in this modified form until by reasonable notice to the

opposite party that it will thereafter be insisted upon, the agreement between the parties is restored to its original form."

See also: *Burdick v. Tum-A-Lum Lumber Co.*, 91 Or. 417 (179 P. 245); *Massey v. Becker*, 90 Or. 461 (176 P. 425); *Gray v. Pelton*, 67 Or. 239 (135 P. 755); *Graham v. Merchant*, 43 Or. 294 (72 P. 1088).

The facts in this case differ materially from those in *Pacific Finance Corporation v. Ellithorpe*, 134 Or. 601 (280 P. 658, 289 P. 1058), in which the contract involved provided:

"Time and each of its terms, covenants and conditions are hereby declared to be of the essence of this contract, and acceptance by the seller of any payment hereunder, after the same is due, shall not constitute a waiver by him of this or any other provision of this contract.

"* * * This contract may not be enlarged, modified or altered except by endorsement hereon, signed by the parties hereto."

It was there held that the finance corporation by accepting payments after they became due did not waive the provisions of the contract relative to payments.

In the case at bar the conditional sales contract was apparently prepared and in general use by the acceptance corporation and identical, except as to the payments, with the contract on the truck held by it at the time the new contract was executed. The acceptance corporation well knew that the plaintiff would not know the amount of the first instalment until advised by it of the amount of the refund on the old contract, yet no attempt was made by the acceptance corporation to advise plaintiff as to the amount of this credit prior

to its letter of August 11, 1932, although the contract is dated June 20, 1932, and the first instalment was due on July 20. Moreover, no explanation was given by the acceptance corporation for such delay.

This delay on the part of the acceptance corporation in notifying the plaintiff of the amount of credit to which he was entitled, the acceptance of a partial payment on the July instalment more than two weeks after it was due, the statement in the letter from defendant to plaintiff under date of August 18 that the finance company "will not permit truck contracts to run over 30 days past due", the request in the letter of the acceptance corporation dated August 22 for check to cover at least the delinquent balance of the July instalment, without insisting on payment of the August instalment, which was past due, the further statement in the letter of September 9 from defendant to plaintiff requesting a reply from him "within a reasonable length of time", and the other facts in the case to which we have referred, might have tended to lead the plaintiff to believe that the acceptance corporation would not rely upon the strict letter of the contract and that he would be given a reasonable length of time in which to make up the payments in arrears before the truck and trailer would be repossessed. This conclusion is fortified somewhat by the fact that three days after the defendant took possession of the truck and trailer the acceptance corporation telegraphed the plaintiff that it must receive from him full payment at once, of the delinquent instalments, or it would have to take action to protect its interest. This and the mailing of subsequent notices as to past and future instalments would indicate that the acceptance corporation had not, on September 19, 1932, taken any action to

enforce the time-essence clause of the contract. In any event, the acceptance corporation at no time gave notice, after it had disregarded the provision that time should be the essence of the contract that it was going to insist on this provision and that the plaintiff must pay the delinquent instalments within a definite time, or the truck and trailer would be repossessed by the corporation.

At the time the new contract was made the plaintiff had paid on the purchase price of the truck and trailer approximately $3,366 of the total price of $5,053. He had not, as already stated, been prompt in his prior payments and hence the new contract was made in order to reduce the monthly instalments, with the expectation that he would thereby be enabled to meet payments more promptly.

In the case of *Endicott v. Digerness,* 103 Or. 555 (205 P. 975), this court, in referring to the question of waiver, said:

"No general rule in regard to a waiver by such a seller can be laid down, other than that a waiver may be inferred whenever the conduct of the conditional vendor is inconsistent with the idea that he still expects to enforce a return of the goods if the conditions are not performed. Whether such is the case or not is a question of fact: 1 Mechem on Sales, § 624."

The stipulation that time is of the essence of the contract is for the benefit of the vendor, and, as was said in *Johnson v. Berns,* supra, if he would insist upon it, he must act promptly. Since such a stipulation is for his benefit, he may waive it by doing or failing to do things from which it may be inferred that he does not intend to insist on strict compliance with that clause of the contract.

In the case at bar the acceptance corporation prevented the plaintiff from paying the first instalment on time, by failing to advise him of the amount of the credit to which he was entitled under the old contract. It accepted a partial payment on the first instalment over two weeks after it became due, without protest. Although the plaintiff was given to understand that he had 30 days of grace in which to make his monthly payments, nevertheless the defendant appeared at Tillamook on Monday morning after the plaintiff had left for Portland and demanded payment of the balance of the July instalment, amounting to $35.97, and all of the August instalment, amounting to $154.53, the latter not yet 30 days past due, or possession of the truck and trailer. Upon refusal by those in charge of plaintiff's office to make these payments the defendant's representative departed, taking the truck and trailer with him.

The record contains sufficient evidence to sustain plaintiff's contention that the acceptance corporation had waived the stipulation that time was of the essence of the contract, and had not thereafter given plaintiff reasonable notice that it intended to insist upon this provision of the contract, so as to restore the agreement between the parties to its original form.

The judgment is affirmed.

BEAN, CAMPBELL and ROSSMAN, JJ., concur.

Petition for rehearing denied February 6, 1934

ON PETITION FOR REHEARING
(29 P. (2d) 516)

*Will H. Masters,* of Portland, for appellant.

*George P. Winslow,* of Tillamook, for respondent.

*Wilbur, Beckett, Howell & Oppenheimer, Francis E. Marsh, Jaureguy & Tooze, Coan & Rosenberg, A. H. McCurtain, Wood, Montague, Matthiessen & Rankin, Bartlett Cole,* and *E. M. Morton,* all of Portland, amici curiae.

BAILEY, J. Counsel for appellant has filed a printed document designated as ''Motion for Rehearing and Argument Supporting the Same'', in which it is stated that the appellant ''moves the court to grant a rehearing * * * and in support of said motion respectfully submits to the court the following reasons'', followed by a general argument concerning the law relative to conditional sales contracts, especially with reference to the rights of the vendor when the vendee has failed to comply with the time essence provision of the contract. A brief in support of the motion has also been filed by several attorneys representing numerous finance and commercial concerns, as *amici curiae.*

■ Rule 25 of this court requires that applications for rehearing shall set forth, without argument, ''wherein it is claimed the court has erred''. This requirement has not been complied with, in the motion

before us. When there is no compliance with this rule, it is extremely difficult to summarize and pass upon the exact points attempted to be made by such a petition for rehearing. It is, however, apparent from a study of the briefs submitted that some of the important facts forming the basis for our former decision have either been entirely ignored or not given proper consideration by those seeking a rehearing. Those facts, briefly, are as follows: (1) When the conditional sales contract was entered into, it was understood that the vendee was to be given a credit on the first monthly instalment, due July 20, 1932, yet no attempt was made by the finance company to advise the vendee of the amount of this credit until more than three weeks after the payment was due, thereby preventing him, through no fault of his own, from complying strictly with the terms of the contract. (2) The vendee might have been led to believe, from the letters and notices which he received, that he had thirty days of grace after the due date, in which to make his monthly payments, and before thirty days had elapsed following the due date of the August payment the agent of the defendant corporation appeared on the scene, in the absence of the plaintiff, and upon the failure of those in charge of plaintiff's business to comply with his demand for immediate payment of both July and August instalments, removed the truck and the trailer. (3) Three days after the defendant had taken possession of the truck and trailer the acceptance company, owner and holder of the sales contract, telegraphed the plaintiff: "Three hundred forty-seven dollars past due your refinanced account. Must have full payment at once or take action protect our interest." The acceptance corporation sent a copy of the telegram to the defendant and on September 24 the defendant by letter acknowledged receipt

thereof and, among other things, said: "Would advise yesterday we contacted Mr. Mathers and as we were unable to secure any money, we seized the truck and trailer and brought them into our shop."

In defense of its action in repossessing the truck and trailer the defendant introduced in evidence a letter to it from the acceptance corporation dated September 6, 1932, in which the acceptance corporation called attention to delinquent payments on the Mathers contract and stated: "Under the circumstances we will have to insist on this equipment being repossessed without fail, unless the account is brought completely up to date by payment of the above delinquencies, and also the note which matures on September 20 for the additional sum of $154.53. This payment must be made by September 20." The record fails to disclose, however, that the contents of the letter last above mentioned were communicated to the plaintiff, although the defendant at various times did write to plaintiff concerning the delinquent instalments, requesting payment.

It is apparent from the record, as above outlined, that the acceptance corporation had not, on September 19, 1932, when the defendant seized the truck and trailer, intended to take possession of this motor equipment until some time subsequent to September 20, otherwise it would not have written as it did to the defendant on September 6, nor later, on September 22, have wired the plaintiff demanding the past due payments. Just why the defendant should have written the acceptance corporation on September 24 that it had "seized the truck and trailer" on the previous day is not apparent, unless it had acted without the knowledge and consent of the finance corporation on September 19, in repossessing the truck and trailer. The de-

fendant evidently did not, for some reason, care to advise the owner and holder of the contract of the exact date when it "seized the truck and trailer".

The view which we take of the case is that there is sufficient evidence to sustain the verdict and that no prejudicial error was committed by the trial court. This renders unnecessary a further discussion of whether or not the facts in the case are sufficient to constitute a waiver or estoppel on the part of the acceptance corporation.

The petition for a rehearing is denied.

BEAN, CAMPBELL and ROSSMAN, JJ., concur.