Argued October 28; reversed December 9; rehearing
denied January 27, 1948

GEROY *v.* UPPER and KNIGHT *v.* BARRY
187 P. (2d) 662

536

*E. M. Sabin,* of Union, for appellant.

*W. F. Brownton,* of La Grande, for respondent.

Before Rossman, Chief Justice, and Lusk, Belt, Bailey, Hay and Winslow, Justices.

HAY, J.

The plaintiff, Lyle J. Geroy, and the defendant, W. J. Upper, on August 30, 1946, became associated as copartners for the purpose of engaging in the business of sawmilling, at Union, Oregon, under the assumed business name of Cove Pine Mills. The venture was not successful. The partners were apparently

incompatible, and the business does not seem to have been sufficiently financed. The mill, after operating for a brief period, was shut down on October 9, 1946. There being no partnership funds available, Mr. Upper met the payroll on that occasion out of his own pocket. On November 9, 1946, Mr. Geroy filed suit in the Circuit Court for Union County for dissolution of the partnership and for an accounting. The complaint asked that a receiver of the partnership property be appointed. Mr. Upper, in his answer filed January 6, 1947, consented to the appointment of a receiver, and accordingly, on January 14, 1947, the court appointed Mr. L. G. Knight as receiver.

On May 1, 1946, Nelson Equipment Co., of Portland, Oregon, contracted in writing to sell to Mill Creek Lumber Co., of Cove, Oregon, a certain diesel engine. The sale price was $4,898, payable $1,698 on execution of the contract and the remainder in ten equal monthly installments of $320, with interest. Title to the engine was reserved by the seller until fully paid for, with the right, upon default by the buyer in payment of any installment, to take possession of the engine without demand or notice, and to "make such disposition thereof" as the seller might deem desirable. In the event of such repossession, all payments theretofore made were to be retained by the seller as liquidated damages for the use of the engine. Waiver of any default was not to constitute a waiver of any subsequent default. It was provided that time was to be of the essence of the contract. On August 30, 1946, Mill Creek Lumber Co. transferred its interest in the engine to Cove Pine Mills.

On September 6, 1946, Puget Sound Machinery Depot, of Seattle, Washington, contracted in writing to sell to Cove Pine Mills a certain edger. The sale

price was $1,137, payable $500 on execution of the contract and the remainder ninety days thereafter. The seller reserved title to the edger until fully paid for, with the right, upon default, to repossess it as its property. In the event of such repossession, payments theretofore made were to be considered as rental. Time was not made of the essence of the contract.

Cove Pine Mills paid the installments of the purchase price of the diesel engine due September 1 and October 1, 1946. The unpaid remainder was $1,953.60, with interest. No further payments were made. On December 6, 1946, the unpaid remainder of the price of the edger, $637.00, became due. Nothing has been paid thereon.

On December 20, 1946, Nelson Equipment Co. assigned the engine contract to Mr. E. M. Sabin. On December 31, 1946, Puget Sound Machinery Depot assigned the edger contract to Mr. Sabin. Mr. Sabin, in procuring such assignments, was acting in behalf of one Harry Barry, and, on January 6, 1947, he assigned both contracts to Mr. Barry. On December 24, 1946, Sabin, as attorney for Barry, gave Cove Pine Mills written notice that Barry had purchased the contracts, declared them forfeited for default in payment, and demanded possession of the machinery. On January 6, 1947, he gave a similar written notice to Geroy and Upper, as copartners doing business under the style and name of Cove Pine Mills. Possession was not taken, however, and, on January 14, 1947, as has been stated, a receiver was appointed for the partnership. On January 28, 1947, Barry (apparently by leave of court) appeared in the suit brought by Geroy against Upper for dissolution of partnership, and moved for permission to sue the receiver for

possession of the property, which permission was granted. On February 18, 1947, the receiver petitioned the court for an order confirming "his right to the said property" (the engine and edger), authorizing him to "liquidate the partnership estate's interest" therein "by completing" the conditional sale contracts "and selling the said property or by disposing of the equity of the partnership in the said contracts". To this petition, Barry filed an answer denying generally that the receiver had any rights to the possession of the property under the contracts, or otherwise, or to sell the same, and, by an affirmative answer in the nature of a complaint in claim and delivery, demanded judgment against the receiver for possession of the property and for damages for the detention thereof. Issue was joined upon such affirmative answer, and, after a hearing thereon, the court, on May 20, 1947, ordered and decreed that the receiver was entitled to the possession of the property and had "the right to complete the said contracts by paying the payments due thereunder to the said Harry Barry within a reasonable time from the date of this order", authorized the receiver to sell the property at private sale, subject to confirmation by the court, and required that moneys received from such sale, "excepting any amounts paid to Harry Barry", be paid to the clerk of court. Barry appeals from the decree.

█ Title to the property was reserved by the sellers for the purpose of securing payment of the purchase price. *Landigan v. Mayer,* 32 Or. 245, 249, 51 P. 649. In November and December, 1946, the seller under the engine contract, through a San Francisco concern to which it had assigned the contract for collection, made several demands upon the partnership for payment of the past-due installments. No extension of

time was asked by the partnership and none was given. The seller, under the circumstances, had the option either to treat the sale as absolute and sue to recover the remainder of the sale price or to regard it as cancelled and take possession of the property. *McCargar v. Wiley*, 112 Or. 215, 219-20, 229 P. 665. At the time when the sellers' assignee made his second demand for possession of the property, the buyers were in default, under the engine contract, upon installments due November 1 and December 1, 1946, and January 1, 1947. Even assuming that the provisions of the contract making time of the essence thereof had been waived with respect to the November and December installments, it would appear that the seller's assignee was entitled to regard nonpayment of the January installment as a breach of the contract in respect of which he had the right to exercise his option to declare the sale cancelled and take possession of the property. The contract specifically permitted him to do so without demand or notice to the buyers, and, therefore, no demand or notice was necessary. *Jeffries v. Pankow*, 112 Or. 439, 442, 223 P. 745, 229 P. 903.

The seller under the edger contract, however, made no demand for payment of the remainder of the purchase price, which was due December 6, 1946. Time was not made of the essence of that contract, but the right was reserved to retake the property on default of payment. The seller took no affirmative action whatever upon default of the buyer. It permitted almost a month to elapse, and then sold and assigned the contract to Barry.

> "The law has no interests of its own to subserve in insisting upon forfeitures or the other results of default. The remedies it gives are for the benefit of the vendor, and he may waive them

if he will. He may do this, however, either expressly or by implication, and as the results of default more often work hardship to the buyer than to the seller, the law looks with complacence at least upon those acts of the vendor which may fairly be construed as indicative of his intention not to insist upon a forfeiture of the buyer's rights. If, therefore, the seller, notwithstanding the default, does not avail himself of his appropriate remedy, but so acts as to reasonably warrant the inference that he regards the buyer's rights as still subsisting, he will be deemed to have waived the default, and he will not be at liberty to declare a forfeiture until he has in some way put the buyer, whom he has thus misled, in the attitude of a fresh default." 1 Mechem on Sales, section 609.

It is said that no general rule can be laid down with regard to what constitutes waiver by a seller in such cases, but that waiver may be inferred whenever the conduct of the seller is inconsistent with the idea that he still expects to enforce a return of the property if the conditions are not performed. *Endicott v. Digerness*, 103 Or. 555, 568, 205 P. 975. It may be inferred, from the facts in the present case, that the omission of the seller to demand payment was consistent with the idea that it did not expect to insist upon strict performance, and that, before it would demand possession of the property, it would give notice to the buyers and a reasonable time within which to pay the balance due. Contract provisions for forfeiture of the property in such cases are not self-executing or automatic. Some affirmative action upon the part of the seller, such as a demand for payment, is required, before he may declare a forfeiture and retake the property. 47 Am. Jur., Sales, section 898. The utter silence and inaction of the seller during the brief period following the buyers' default, gave no

indication to the buyers that the seller regarded the contract as being otherwise than fully subsisting. The situation of the buyers was precisely the same as that of a buyer under a time-essence contract of sale when the time-essence feature has been waived. In such cases, it is held that, before exercising his right to declare a forfeiture, the seller must give notice to the buyer that, unless payment is made within a definite and reasonable time, possession of the property will be taken. *Burdick v. Tum-A-Lum Lumber Co.,* 91 Or. 417, 422-3, 179 P. 245; *Samuels v. Mack-International Motor Truck Corp.,* 128 Or. 600, 604, 275 P. 596; *Mathers v. Wentworth & Irwin, Inc.,* 145 Or. 668, 677, 26 P. (2d) 1088, 29 P. (2d) 516; *Paine v. Meier & Frank Co.,* 146 Or. 40, 54, 27 P. (2d) 315, 29 P. (2d) 531; 47 Am. Jur., Sales, section 899.

"* * * Since contracts like the one here are not self-executing, the law by implication introduces into such contracts a provision that the right of forfeiture shall be exercised only after first giving notice for a reasonable period of time, or rather, speaking figuratively, the invisible and omnipresent hand of the law writes such a provision into the contract; and, therefore, the right to forfeit cannot be fully exercised unless: (1) the vendor gives reasonable notice; and (2) the purchaser fails to pay within the time fixed by the notice. * * *"

*Epplett v. Empire Inv. Co., Inc.,* 99 Or. 533, 541, 194 P. 461, 700.

See also *Graham v. Merchant,* 43 Or. 294, 305-6, 72 P. 1088; *Mitchell v. Hughes,* 80 Or. 574, 583, 157 P. 965; *Ewing v. Ryan,* 113 Or. 225, 228, 231 P. 981; *Feehely v. Rogers,* 159 Or. 361, 371, 76 P. (2d) 287, 80 P. (2d) 717; *Grider v. Turnbow,* 162 Or. 622, 640, 94 P. (2d) 285.

■ It would seem, therefore, that the action of the sellers' assignee, in making inflexible demands for

possession of the edger without giving the buyers the alternative of paying the remainder of the sale price, is to be regarded as inequitable.

Whether or not the partnership receiver may take advantage of such inequitable conduct is another matter. Barry, the seller's assignee, twice within thirteen days demanded possession of the edger. We must construe such demands as being, at the least, affirmative acts indicating his intention to insist upon performance of the contract. In order to be entitled to the protection of a court of equity under such circumstances, it was incumbent upon the buyers to take some action to show, upon their part, "eagerness, promptitude, ability, and a disposition to perform". *Graham v. Merchant*, supra. See also *Mitchell v. Hughes*, supra. The buyers did nothing whatever in response to Barry's demands. They neither tendered payment, nor indicated willingness or ability to pay. The partnership affairs were in a chaotic condition. The sawmill had long been shut down, there was no apparent prospect that it would resume operation, and the machinery was lying idle in the mill. Suit for dissolution and accounting had been instituted by one of the partners against the other, and no partnership moneys were available to meet the payment due. Rather than being eager, prompt, able and willing to perform their engagements, the buyers were shown to have been slack, dilatory, unable and unwilling. They would seem to have been more interested in fighting each other than in performing their contracts. Demand for payment, under such circumstances, would have been futile and unavailing—a vain thing, the performance of which the law does not require. *Epplett v. Empire Inv. Co., Inc.*, supra. Persons who are so indifferent to their contractual obligations as the buyers here were

shown to have been are in no position to claim relief in a court of equity.

"The principles involved in the rule applicable to waiver of the time essence clause, with attendant forfeiture, are that the purchaser must in such cases be given a reasonable time and opportunity, consistent with his contract, to perform its terms and save that which he has invested from forfeiture, if he sees fit to perform within such reasonable time; but he cannot be compelled to perform, and, though failure to perform the terms is due to inability, so long as such inability is not due to violation of the contract by the vendor, its effect is the same as voluntary refusal would be, since the courts cannot alter contracts, or impose different terms than those the parties have stipulated. * * * Further reasonable time could have served no purpose, no acts being shown indicating either willingness or readiness to abide by the contract further. * * *"

*Mitchell v. Hughes,* supra (80 Or. 574, 584, 157 P. 965.)

The conduct of the buyers was, under the circumstances, tantamount to an abandonment of the contract. Such abandonment was a waiver of notice. *Anderson v. Hurlbert,* 109 Or. 284, 296, 219 P. 1092; *Epplett v. Empire Inv. Co., Inc.,* supra; *Title & Trust Co. v. Durkheimer Inv. Co.,* 155 Or. 427, 442, 63 P. (2d) 909, 64 P. (2d) 834. We are of the opinion that the inaction of the buyers in the face of Barry's demands waived the necessity for notice, and that Barry was entitled to take possession of the edger as his property, in accordance with the provisions of the contract.

■■ It is suggested that, upon appointment of the receiver, the buyers' rights under the contracts passed to him, and that, during the existence of the receivership, the status of the contracts could not be affected

by any act of either of the parties thereto. The receiver, however, acquired no other, greater or better interest in the contracts than the buyers had. *Weyerhaeuser Co. v. First Nat. Bank,* 150 Or. 172, 197-8, 38 P. (2d) 48, 43 P. (2d) 1078; *Hoevet v. Westwood Lbr. Co.,* 170 Or. 423, 438, 134 P. (2d) 738.

"* * * The general rule is that the appointment of a receiver will not change any existing contractual relation or create any new contractual relation or right of action thereon, and a receiver can do nothing to impair a contract as between the parties thereto. Such an appointment does not in general operate to excuse performance of an existing contract, nonperformance giving the other party a cause of action for damages. The rule has been applied to contracts of sale and purchase, although there is some contrary authority, particularly among the earlier cases, in this connection. * * * " 45 Am. Jur., Receivers, section 138.

"A receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, equities, privileges, claims, defenses, and estoppels existing at the time of his appointment. In other words, a receiver possesses no rights with respect to the trust property superior to those which would be possessed by the one for whom he was appointed, were the latter acting for himself. Furthermore, the appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. The receiver stands in the shoes of the corporation or person whose property is in receivership with exactly the same rights and obligations, with respect to such property, that such person had at the inception of the receivership. * * * " 45 Am. Jur., Receivers, section 156.

The buyers' interests under the contracts having been forfeited prior to appointment of the receiver, such

appointment did not have the effect of reviving such interests, or even of vesting in the receiver the right to possession of the property. *Union Bank of Chicago v. Kansas City Bank,* 136 U. S. 223, 34 L. Ed. 341, 10 Sup. Ct. 1013.

■ The receiver's first affirmative defense to Mr. Barry's affirmative answer comprised general allegations to the effect that Barry procured assignment of the contracts to him for the purpose of defrauding the partnership and its creditors; that he was not a bona fide purchaser for value; and that he does not come into court with clean hands. These allegations were mere conclusions, and Barry moved to strike them as such. The motion was denied, but, in our opinion, it was well taken. In any event, there was no evidence to support the allegations. Barry may have been looking for a bargain, but that fact does not convict him of fraud, nor, under the circumstances, affect his right to cancel the contracts and take possession of the property. Unless some principle of waiver or of estoppel operated to stay his hand, it is immaterial what may have been his motive in acquiring the contracts or in declaring a forfeiture of the buyers' rights thereunder.

■ Another defense alleges that assignment of the contracts by the sellers to Sabin was procured by Sabin upon the representation that he was acting for the buyers, and without disclosure that he was agent for a third party who desired to purchase the contracts for the purpose of acquiring, for less than its value, the property covered thereby. There was no proof whatever that Sabin told the sellers that he was representing the partnership. It is not perceived that the other allegation constituted a defense to the af-

firmative answer, and, in any event, there was no proof to support it.

■ As for the demand for damages for detention of the property by the receiver, there was no proof that Barry suffered any damage in this respect.

The decree is reversed, and the lower court is directed to enter judgment awarding Harry Barry possession of the engine and edger. No costs will be allowed to either party.

WINSLOW, J., concurring in the result.