Argued March 7; reversed April 16; rehearing denied
May 14, 1935

# KLIKS *v.* COURTEMANCHE

(43 P. (2d) 913)

*B. A. Kliks,* of McMinnville (Charles W. Redding, of Portland, on the brief), for appellant.

*James E. Burdett* and *W. T. Vinton,* both of Mc-Minnville, for respondent.

BAILEY, J.  This action was brought by the plaintiff to recover damages for the alleged conversion by the defendant of certain personal property in Yamhill county, Oregon.  The facts in the case are substantially as follows:  On October 13, 1933, one W. O. Phelps, a farmer, suddenly and unexpectedly departed from the state, after disposing of some of the personal property covered by a mortgage held by the plaintiff.  He left on the farm which he had occupied, along with other personal property, the implements involved in this litigation, possession of which is claimed by the plaintiff under her chattel mortgage and by the defendant

under conditional sale contract. This property consisted of one Birdsall clover huller, one twenty-two-inch Rumley thresher, one feed chopper, one McCormick-Deering tractor, one six-foot McCormick-Deering mower and rake, one three-bottom tractor plow and one disc harrow.

On or about September 12, 1927, the defendant Courtemanche, who is engaged in the implement business, sold to Phelps the tractor and plow for a sum not definitely stated. There was some payment or trade-in, which left a balance of $1,310, for which amount the defendant took from Phelps two notes, one for $400 and the other for $910, due June 1, 1928, and October 1, 1928, respectively. These notes and others hereinafter referred to as having been given by Phelps to the defendant provided that title to the implements of which the purchase price or balance thereof was thereby represented should remain in the seller until the full purchase price had been paid.

The thresher was sold by defendant to Phelps on July 1, 1929, for $550, for which amount defendant took from Phelps two notes for $275 each, one due October 1, 1929, and the other October 1, 1930.

On October 11, 1929, the feed grinder and the harrow were sold by the defendant to Phelps for $140, and a note therefor taken payable one year from date.

No note was taken at the time of sale of the mower by defendant to Phelps, which occurred about July 5, 1930, for the purchase price of $105, although the defendant testified that there was an oral agreement between himself and the purchaser that the title to the property should remain in the vendor until payment, and that a note was to be given later. The note was given to defendant on October 8, 1930, in the sum of $277.72, of which $105 represented the purchase price

of the mower, and the balance, $172.72, was to be applied on open book account.

In the summer and fall of 1931 the defendant desired "additional security" for the indebtedness which was owing to him by Phelps. He made two or three trips to the farm occupied by Phelps in quest of further security and was told by Phelps that the only property other than that purchased from Courtemanche which he had, that was not mortgaged to the plaintiff, was the clover huller. Thereafter, about December 5, 1931, Phelps came to the defendant's store and signed a note for the full amount which he then owed the defendant, including an unpaid balance on the notes hereinbefore referred to and an open book account amounting to at least $102. The note so signed is as follows:

"$1450.60 McMinnville, Oregon, Dec. 5th, 1931 No. 915

"Payable 250.00 Jan. 15th, balance July 1st after date, for value received, I promise to pay to the order of L. A. Courtemanche, at McMinnville, Oregon, the sum of fourteen hundred fifty & 60/100 dollars in U. S. gold coin of the present standard value with interest from date, in like coin at the rate of 8 per cent per annum, until paid, subject to the following conditions hereinafter named. And if suit or action is instituted to collect this note or any portion thereof, I promise to pay such amount as may be adjudged reasonable by the court as attorney's fees in said suit or action. I expressly waive the provisions of and all benefit and advantage from any and all appraisement, homestead, stay and exemption laws now existing or hereafter made. This note is given for 1-15-30 McC-D tractor, 1-3-bottom 14″ P. & O. plow, 1-6-ft. McC-D mower, 1-22-36 Advance Rumley Thresher, 1-3-furrow P. & O. disc plow, 1-10″ McC-D feed grinder, 1 No. 6 Birdsall clover huller, of the value of $2,000.00 and the express conditions of the sale and purchase are such that the title, ownership, or possession does not pass from L. A. Courtemanche until this note and interest

are paid in full, and the said L. A. Courtemanche, or his agents, have full power to declare this note due and to take possession of the article or articles for which it is given when they deem themselves insecure, even before the maturity of this note or either of the above instalments. And if I sell, loan, pledge, or otherwise dispose of the said machines or remove the same from the county of Yamhill, I hold myself liable to the full penalty of the law, and hereby empower and authorize the said L. A. Courtemanche to enter the premises wherever the said article may be and take or carry the same away, and sell the same at public or private sale without notice, the proceeds (after expenses are paid) to be applied on this note and the balance then unpaid, shall, in consideration for the use and rent of such property, be valid and subsisting claim against the vendee.                    "W. O. Phelps"

Not any of the six notes preceding the one of December 5, 1931, which, according to defendant's testimony were identical in form with the one above set out except as to amounts, items covered and dates, had been paid at the time of execution and delivery of the note of December 5, 1931, with the exception of one for $275 due on October 1, 1929. The record fails to disclose the amount due on any of the other five notes when the last note was given. The plaintiff, prior to the trial, however, had served notice upon the defendant to produce his records to show what machinery had been purchased by Phelps from him, and the dates and amounts of payments made thereon by Phelps. This the defendant failed to do, giving as reason therefor that he did not think they were wanted or needed. When told by the court to produce them the defendant stated that it would take six to eight hours to do so, as the only account of the payments was by endorsement on the backs of the notes and entries in the daily

cash receipts. He said that he did not have the original notes in his possession as the same had been returned to Phelps when the note of December 5 was given, and in order to obtain the desired information he would have to look through his cash account from 1927 or 1928 to December 5, 1931, the date of the last note.

Both the defendant and Kenyon, his employee who kept his accounts, denied emphatically that Phelps had made a cash payment of about $1,000. Later, after Phelps testified that in the year in which he had given the plaintiff a note and mortgage for $4,500 [October 1, 1929], from the additional amount loaned him by the plaintiff he had paid the defendant $1,000 on account of machinery purchased, Kenyon, within a few moments, produced records showing that the amount paid was not $1,000, but $996.34. Payment of that sum was made on October 4, 1929, and was applied by defendant as follows: $593.15 on the $910 note; $275 on the note for that amount due October 1, 1929; and the balance of $128.19 in full settlement of open account due from Phelps to the defendant.

It was only after a very searching inquiry on cross-examination and with great reluctance on his part that the defendant finally admitted that the note for $277.72 claimed to represent the purchase price of the mower included an item of $172.72 for open book account and that the note of December 5, 1931, also included a balance owing by Phelps to the defendant on open account. The same difficulty was experienced in an attempt by the plaintiff to ascertain the number of notes from Phelps to defendant then outstanding and the implements for the purchase price of which they purported to have been given.

Not any of the earlier notes were produced at the trial, and Phelps denied executing any such instru-

ments other than a note about September, 1927, for the tractor and plow, and the one of December 5, 1931. He also denied that any of the notes had been returned to him or that any of them except the last were other than ordinary promissory notes without reservation of title.

The plaintiff claimed right to possession of the personal property here involved by virtue of a chattel mortgage given by Phelps and his wife to her on November 18, 1932, which mortgage covered all the implements concerned in this litigation, together with much other personal property. The mortgage was given to secure a promissory note for $2,110 dated November 18, 1932. These instruments were renewals of other notes and mortgages, the first of a series of which were given by Phelps and his wife to plaintiff in October, 1927, and were thereafter annually renewed. Each renewal included the balance due and other indebtedness to or advances by the plaintiff. Not any of the mortgages were satisfied of record. They and the notes were retained by the plaintiff. On October 13, 1933, there was approximately $1,860 due on the last note.

The first of this series of notes was dated October 1, 1927, and was for the sum of $4,000. This was to be paid in installments. The record does not show how much was paid on this note when the next one, dated October 1, 1928, for $3,500, was given. On October 1, 1929, there remained $735.23 still due from Phelps and his wife to the plaintiff, and this amount, together with an additional loan, made up the $4,500 named as principal in the note of that date, on which note there remained a balance of $3,150 due when the note of October 1, 1930, for $3,700, was executed. The amount of this last indebtedness was reduced to $2,155.78 on October 1, 1931, when the note of that date for $2,425 was given.

The final note, dated November 18, 1932, included a balance of $1,502.12 then due from Phelps to the plaintiff. At the time of the execution of each of these notes Phelps and his wife delivered to the plaintiff a chattel mortgage which contained an affidavit of Phelps to the effect that he was the sole and exclusive owner of the property therein described, that he was in lawful possession thereof, that the same was paid for in full, and that there were no incumbrances or liens of any kind existing against said property. For a number of years these chattel mortgages covered all the personal property involved in this litigation. All were duly filed of record.

When the litigants discovered that Phelps had fled from the state they made strenuous efforts each to gain possession of the farm implements above mentioned, all of which with the exception of the tractor, which had been left with the defendant for repairs, were on the farm abandoned by Phelps. Although the plaintiff and her agents were first to arrive at the farm and assert right of possession of all the personal property left behind by Phelps, the defendant either by muscular strength or vocal persuasion managed to seize possession of the implements and remove them. Due to the manner in which he acquired possession of this personal property the plaintiff refers to this proceeding as an action for damages "for the seizure, removal and conversion by the defendant" of such property.

The plaintiff thereafter proceeded to sell, in the manner provided in her mortgage, the other personal property which it covered, and realized from such sale the sum of $1,026, from which was deducted the expense of sale amounting to approximately $430, leaving due on her note some $1,260 and interest from November 3, 1933.

The cause came on for trial before the court and a jury and at the close of the testimony both parties moved for a directed verdict. The court then took the determination of the case from the jury, but nevertheless submitted to it certain questions upon which the jury was asked to make special findings as advisory, only, to the court. In such special findings the jury fixed the value of each article of personal property here in controversy and further found that the defendant prior to the execution of the note of December 5, 1931, had held conditional sale notes for the balance of the purchase price of all the personal property involved in this litigation, with the exception of that to which he had filed disclaimer; and that the note of December 5, 1931, was a renewal of such former notes.

The court found that the plaintiff was, at the commencement of the action, the owner and entitled to the immediate possession of the Birdsall clover huller, of the value of $200, the disc harrow, of the value of $50, and the McCormick-Deering mower, of the value of $47.50, making a total of $297.50. Judgment was entered for the plaintiff and against the defendant for that sum, plus $75 attorney's fees and her costs. The court further found that the defendant was entitled to possession of the remaining implements above mentioned. From the judgment of the circuit court the plaintiff has appealed.

■■ The plaintiff contends that the note given by Phelps to the defendant on December 5, 1931, in which it is recited that the defendant retains title to certain property until the note is paid in full, is, from the facts and circumstances of the case, a chattel mortgage; and that since it was not recorded plaintiff's rights to the property involved herein, under her chattel mortgage which was duly recorded, are superior to the rights of

the defendant. In 11 C. J., p. 412, we find this statement:

"Whether a transaction constitutes a chattel mortgage or a conditional sale ultimately depends on the intention of the parties, which must be ascertained from their conduct and the attendant circumstances, as well as from the terms of the agreement. Further, the intention must be collected from the entire transaction and not from any particular feature of it, and from the actual agreement of the parties and not from their characterization of it, although the construction placed on the contract by the parties is properly considered. The form of the instrument is of little importance. A contract of conditional sale will not be regarded as a chattel mortgage merely because it is recorded as such."

■ The trial court found that the plaintiff's right to the mower was superior to that of the defendant. That implement, as already stated, was sold by the defendant to Phelps in July, 1930, and no title-retaining note was given for it until the following October, when Phelps gave a note for $277.72, of which $105 represented the purchase price of the mower. During the trial in the circuit court the defendant contended that there was an oral agreement at the time the mower was sold to Phelps that title should be retained by defendant until the implement was paid for and that Phelps then promised to execute an instrument to that effect. Whether the circuit court found against the defendant on the fact, i. e., that no such agreement was made, or reached its conclusion because more than half of the note was to secure an open account, the record does not disclose. On whatever ground this question was decided, we are bound by the trial court's finding that title to the mower was not retained by the defendant, inasmuch as no appeal has been taken by the defendant.

The entire amount of the note in which the mower was mentioned was, in view of the trial court's holding, evidence of only so much indebtedness owing by Phelps to the defendant. The title-reserving clause in the note, which was in all respects similar to the one above set out, was, as far as it concerned the mower, no more than a chattel mortgage. As to just how much remained unpaid on this note on December 5, 1931, when the last note was executed covering unpaid balances on notes and book account, the record is silent. There was at that time, however, according to defendant's own testimony, a balance still due on the $277.72 note, and this balance was incorporated in the note now relied upon by the defendant.

We further learn from the statement of facts that balances then remaining unpaid on the two notes for the tractor and plow, one of the notes for the thresher and one for the grinder and disc harrow, or, as the evidence indicates, disc plow, and at least $102 on open account, were also incorporated in the note of December 5, 1931. As security for the payment of the total of these various amounts making up the principal of that note, the defendant attempted to procure a lien, through the means of vest-pocket title, on the huller, which he had never owned, and on the mower, which he had sold without retaining title until paid for in full. Moreover, through the same means, he attempted to impress a lien on every other piece of machinery mentioned in the note, as security for so much of the indebtedness still owed him by Phelps as exceeded the balance of the unpaid purchase price of each of such implements, whatever that amount may have been. In other words, if in fact the defendant was attempting to retain title to the tractor and plow for the unpaid balance thereon, he was further attempting by the same instrument and

the use of the same language to retain them as security, by means of a lien thereon for the balances due on unpaid purchase price of other machinery as well as other indebtedness then owing him by Phelps. To use a homely expression, he was essaying to ''ride with the hunter and run with the hounds''.

■ Again in 11 C. J., p. 412, we find the rule in regard to the construction of instruments of this nature clearly stated, as follows:

''The inclination of the courts in doubtful cases is to construe the transaction as a mortgage rather than as a conditional sale, for the reason that an error which converts a conditional contract of sale into a mortgage is less harmful than one which converts a mortgage into a conditional sale, provided this is not contrary to the clearly expressed intention of the parties.''

■ At the time the plaintiff first took a mortgage on the personal property of Phelps, and in all renewals of mortgage, Phelps was in possession of the property and exercising rights of ownership over it. Presumably he had a right to mortgage it to the plaintiff to secure her for loans and advances made by her to him. When on the trial of the case the plaintiff proved these facts she established a *prima facie* case.

■ The burden of proof was on the defendant to show, as against the plaintiff, under the facts as above stated, ''that the sale was a conditional one and that the condition was not fulfilled'': 55 C. J., p. 1236.

The question for decision is a difficult one, due to the complicated state of facts in the case. A study of the adjudications which we have examined tends to cloud rather than clarify its solving. In a number of states all conditional sale contracts which are not recorded are frowned upon, while in others they are recognized and enforced. In many states the uniform conditional sales

act is in force, requiring all such contracts to be recorded, and in those jurisdictions the contracts do not differ materially from chattel mortgages.

No adjudicated precedent has been found involving facts similar to those in the case at bar. The circuit court in this case appears to have relied somewhat upon the case of *Bartholomew v. Barton,* 120 Misc. 627 (199 N. Y. S. 399), the opinion in which was written by the trial judge on appeal from the justice court. In that instance the plaintiff sold to one Schell a team of horses for the agreed price of $250, for which the purchaser gave to the seller an instrument in the form of a conditional sale contract, mentioning the names of the horses, stating that the animals had been sold, and reciting that the title to them and another horse and some machinery owned by the purchaser was to be retained by Bartholomew, until the full purchase price of the horses should be paid. Thereafter Schell gave to Barton a chattel mortgage on all the property mentioned in that purported sales contract, except the two horses which had been purchased by Schell from Bartholomew. Later one of the horses bought by Schell from Bartholomew died, and the other one was delivered back to Bartholomew. The only question involved in the case was whether or not the instrument given by Schell to Bartholomew was a mortgage as to the property which had by Schell been mortgaged to Barton, and the court held that it was a mortgage and that since it had not been recorded, while Barton's mortgage had been filed of record, Barton's lien was superior to that of Bartholomew. In the course of its opinion the court referred to the instrument given by Schell to Bartholomew as a conditional sale contract as far as it concerned the two horses sold by Bartholomew to Schell, and a chattel

mortgage as to the balance of the property, with the further observation that there was no reason why both a chattel mortgage and a conditional sale contract could not be included in the same instrument. In that case the vendor did not attempt to secure the payment of any money whatever, other than the amount for which the horses had been sold, and the facts there involved were much less complicated than in the case at bar. Everything which the court volunteered as to the retention by the vendor of title to the two horses so sold was not involved in the case and was *obiter dictum*.

■ The defendant's assertion by means of the instrument of December 5, 1931, of a lien on the property which he had sold to Phelps, not only for the unpaid purchase price but for the entire indebtedness which Phelps owed him, is inconsistent with the assertion of title in him to the property: *Intertype Corporation v. Pulver,* 2 Fed. Supp. 4; *Van Winkle v. Crowell,* 146 U. S. 42 (36 L. Ed. 880, 13 S. Ct. 18).

■ In the summer of 1931, when the defendant made repeated trips to the Phelps farm and urged Phelps to give additional security, both the defendant and Phelps undoubtedly believed that all the property mentioned in the note finally given to provide that security should be treated as in the same category, as far as the rights of the parties were concerned. In other words, it obviously was not intended that the instrument of December 5, 1931, was to be construed both as a title-reservation contract as to some of the property for the balance unpaid thereon and as a chattel mortgage on the same property and other personalty therein mentioned, to secure the total indebtedness owed by Phelps to the defendant. In view of all the facts and circumstances in this case, we are constrained to hold that by the instrument of December 5, 1931, the defendant did not

retain title to the property sold by him to Phelps and that the most which can be claimed for that instrument is the effect of an unrecorded chattel mortgage. It was ineffectual to protect the defendant as against the recorded lien of a *bona fide* mortgage, such as plaintiff held.

We are unwilling to extend our conception of what may constitute a conditional sale contract to include the transaction between Phelps and the defendant culminating in the execution of the instrument of December 5, 1931. Conditional sale contracts are affected with secretiveness by nature, and their function can be much abused. They should not be employed to displace chattel mortgages which to afford protection to the mortgage must be recorded.

We therefore conclude that the circuit court erred in holding that the defendant was entitled to so much of the property involved in the litigation as was not awarded to the plaintiff. The judgment appealed from is in that respect reversed and the cause is remanded with instructions to the circuit court to enter judgment for the plaintiff, in addition to the amount already allowed her, for the sum of $765, the value of the implements which by the judgment of the circuit court were found to belong to the defendant, and for the further sum of $35 as additional attorney's fees. In rendering its judgment for the property which it found plaintiff was entitled to, the circuit court followed the advisory findings of the jury as to its value, and we here adopt a like procedure as to the balance of the property and the amount of additional attorney's fees.

CAMPBELL, C. J., and RAND, J., concur.

BEAN, J., dissents.