BORENGASSER *v.* CHATWELL.

4-7408

182 S. W. 2d 389

Opinion delivered July 3, 1944.

*Hardin, Barton & Shaw*, for appellant.

*Roy Gean*, for appellee.

McHANEY, J. On February 14, 1939, Walter Chatwell, being the owner of the Ft. Smith Paint & Wall Paper Company of Ft. Smith, Arkansas, by written contract, sold the assets of said business to Sigmund Borengasser for a consideration of $9,000, of which $500 was paid in cash and for the remainder Sigmund gave his note for $8,500, payable in monthly installments. The contract between the parties retained title to the assets so sold until the full amount was paid with interest. It also provided that the seller should have title not only to "the present assets" of the business "but is to be given title to any new merchandise purchased for said company until the entire purchase price referred to herein has been paid." Another clause provides that the buyer should keep the stock and assets up and in good condition, take care of the accounts both payable and receivable and pay taxes. On failure to comply with any provision of the contract, purchaser agreed to deliver possession of said assets on demand to seller.

On the same day, Chatwell assigned said contract and note to appellee, his wife. Sigmund was later inducted into the armed forces, and he turned the business over to appellants, who are his brother and father. Default was made in the monthly payments, and appellee

brought this action in the circuit court against Sigmund Borengasser and the appellants to establish and enforce a vendor's lien on all the assets then remaining, including the new merchandise bought during the operation of said business under said contract, sued out a specific attachment thereon, which was levied by the sheriff and the property taken into custody by him, pending court order. The levy was made May 24, 1943. Sigmund was constructively summoned and a report was made by attorney *ad litem* that he had been notified. Charles and Jake were personally served, and answered with a general denial and a plea that on May 29, five days after the attachment, Sigmund executed and delivered to his brother Charles a bill of sale conveying to him "all of the stock of goods and fixtures on hand in the inventory which was contained in the contract of sale between Lillie Chatwell and Sigmund Borengasser." Appellants' abstract. Also that on June 8, 1943, Sigmund sold and assigned to Charles and Jake all of the accounts receivable of said business; that the property so sold and assigned to them is not covered by said conditional sales contract, and the debts due appellee does not represent the purchase price of any of the property so conveyed to them; and that the specific attachment on the alleged vendor's lien is void as against their rights in the property conveyed to them.

Trial to the court by consent, only questions of law being involved, resulted in a judgment sustaining the attachment and ordering the attached property sold, no personal judgment being rendered against any one. The court found there was a balance due appellee, on her conditional sales contract, the sum of $5,403.57 with interest from October 7, 1943, until paid at 6 per cent. per annum, and that appellants were not entitled to recover on their cross-complaint which was dismissed at their cost. Charles and Jake Borengasser have appealed.

Appellants contend, and we think correctly, that appellee was not entitled to a declaration of a vendor's lien under § 11422 of Pope's Digest, nor to the enforcement thereof by specific attachment under § 11423 of

said Digest, for any of the assets of said business not sold to Sigmund Borengasser by Walter Chatwell, for these statutes contemplate that the lien claimant shall be the vendor of the chattels on which the lien is sought to be established. It is conceded by appellants that as to all that property still on hand which was sold by Chatwell to Sigmund in said conditional sales contract, appellee has the right to establish and enforce a vendor's lien. It was so held in *Olson* v. *Moody, Knight and Lewis,* 156 Ark. 319, 246 S. W. 3, even though title was retained to some of the property.

But as to the chattel assets acquired by Borengasser after the original sales contract, Chatwell was not the vendor, was never the owner, and it is difficult to perceive how he or his assignee could establish a vendor's lien on property he did not own and did not sell. As to this, we think the court erred in declaring and attempting to enforce such a lien. Not having the right to such a lien, appellee had no right to an attachment of this property, and the court erred in sustaining it to this extent only, because the title to the so-called "new property" was never in appellee. *Ferguson* v. *Hetherington,* 39 Ark. 438.

We think the contract here involved was ineffectual in so far as it attempted to put the title to the "new property" in appellee so as to give her a vendor's lien under said statute, but we agree with appellants that it did give her an equitable lien on said assets acquired subsequent to the date of said contract which lien might have been enforced in a court of equity. Appellants in their reply brief say: "Appellee, under her contract, clearly had an equitable lien by virtue of the attempt to reserve title in what she did not own. Whether this lien be in the nature of an unrecorded mortgage or what-not, she had adequate remedy of foreclosing this lien or having it established in the chancery court." We note from the record that a sale of all the assets attached was had, a report of sale thereof to appellee of "one lot of paint, wallpaper and outstanding accounts due by customers—and fixtures" on a bid of $2,000. No

exceptions were filed to the report of sale, and the sale to appellee was approved and confirmed. This appears to have been a sale of the property as a whole. No request was made by appellants to have the old and the new assets sold separately and the complaint did not ask for a sale of the customer accounts, but same were sold without objection. No contention is made that the sale was for an inadequate price or was irregular in any particular.

We are, therefore, of the opinion that it would be a useless and expensive procedure to reverse and remand this case to the circuit court with directions to transfer to chancery for the purpose of foreclosing the conceded equitable lien of appellee on the "new assets" and again selling same. Since they have already been sold for a sum about which no complaint is made, it would appear useless to sell them again.

Appellants having acquired their alleged interest in the property after this action was begun, with full knowledge of the outstanding contract and the rights of appellee thereunder, we think the court correctly dismissed their cross-complaint, and that a like result would be inevitable on a proceeding in equity.

The judgment is accordingly affirmed.

McFADDIN and KNOX, JJ., (dissenting). The opinion of the majority might well be termed an opinion of "confession and avoidance," because the majority practically agree with all of appellants' contentions down to the language in the paragraph third from the end of the opinion, and the language reads: "We note from the record that a sale of all the assets attached was had, a report of sale thereof to appellee. . . . No exceptions were filed to the report of sale, and the sale to appellee was approved and confirmed. . . ." Because of the approval of this sale without exceptions, the majority hold that it would be a useless and expensive procedure to reverse and remand, as urged by appellants. In other words, it seems to us that the majority are holding that appellants are right, but the appellants lose, because of failure to object to the report of sale.

The sale was conducted and approved long after the rendition of the judgment here appealed from. The record reflects that the circuit court judgment was rendered November 15, 1943; that the motion for new trial was overruled and appeal prayed and granted on November 29, 1943; that the sale was held on December 17, 1943, and reported to the court on that day, and approved by the court on December 20, 1943. Thus, the circuit court judgment involved on this appeal had been made and appeal prayed and granted 21 days before the sale was approved; and yet the majority use the approval of the report of sale as cutting off the error (almost conceded by the majority) to have been made in the judgment. We fail to see how something happening after the appeal had been prayed and granted could be held a waiver of the error of the court in rendering the judgment appealed from.

Because we believe appellants are correct, and because we believe that the failure to object to the sale did not waive the error of the judgment, we, therefore, dissent.