Argued January 20, reversed and remanded March 17, 1954

# DAVIS *v.* WOOD ET UX.
268 P. 2d 371

604

O. M. *Panner* and *Charles E. Boardman,* of Bend, argued the cause for appellant. With them on the brief were McKay & Panner, of Bend.

*Robert H. Foley,* of Bend, argued the cause for respondents. With him on the brief were De Armond, Goodrich, Foley and Gray, of Bend.

BRAND, J.

This is a suit for a declaratory judgment and for additional affirmative relief. The plaintiff who purchased personal property under a conditional sales contract contends that the seller-defendants wrongfully declared a forfeiture and converted the property to their own use. The plaintiff seeks a decree determining the amount, if any, which is due to the defendants on the purchase price and declaring that the plaintiff, upon paying such amount, if any, shall be the owner of the property. He seeks restitution of the property or its value, and damages for the withholding thereof. From a decree for the defendants the plaintiff appeals.

On the 18th day of March 1948 plaintiff Davis entered into a contract in writing for the purchase from the defendants Wood of personal property described in Exhibit A attached to the complaint. Under the contract, the making of which is admitted, the defendants agreed to sell to plaintiff all of the personal property, fixtures and equipment in a cafe owned by the defendants in the city of Bend, Oregon, at the agreed price of $5,500. Payment was to be made as follows: $2,500 down and the balance in monthly payments of $75 "in advance of the first day of each month," deferred payments to bear interest at 6 per cent, each monthly payment to include interest. Title was to remain in the sellers until full payment. There were provisions for payment of taxes, insurance, and for the care of the property. Time was declared to be of the essence. All payments were to be made within ten days from the due date, and in the event of failure, the sellers were granted the "option" to "declare" the contract void and keep all payments as rental for the personal property, or sellers could pay any past due insurance premiums and taxes and charge such payments to the buyer. In consideration of such sale of the personal property it was agreed that sellers would give the buyer a five-year lease on the cafe property, which would be evidenced by a separate instrument. In the third "option" given the sellers in event of default by the buyer it was provided that the sellers might transfer payments made on rent of the building and apply them on payments owing on the contract of purchase of the personalty "so as to keep the contract of purchase up to date and leave any default to apply on the lease * * *." Neither the contract nor the personal property and fixtures were to be sold or assigned with-

out the sellers' consent until full payment. The contract also provided as follows:

> "It is understood and agreed that this conditional sales contract is made on the express understanding that the property being sold to the buyer shall be used by him for at least five years for restaurant purposes in the building being leased to him by the sellers herein * * *."

In addition to other provisions not now material, the contract provided that "the buyer shall install approximately $2500.00 worth of additional personal property and equipment in said restaurant business before he opens the same for business" and it was "expressly agreed that all such additional personal property and fixtures shall be deemed and considered as part of the sellers' property which they are hereby selling under this contract to the buyer, and all of the terms and conditions heretofore mentioned in this contract shall apply to all of such additional property installed by the buyer and all other additions which he may make or install during the term of this contract."

The complaint alleged that the plaintiff performed all of his obligations under the contract and installed "equipment and fixtures and acquired additional personal property of the value of $3700.00 which became subject to the terms of the contract * * *." Plaintiff alleges that he made all payments up to and inclusive of the payment due in October 1951, both principal and interest, and that there was then unpaid upon the full purchase price a balance of principal of $131.32. The reasonable value of the said personal property is alleged to be $8,100. Plaintiff alleges that certain payments were made after they had become delinquent and that defendants had waived strict performance and that they did not reinstate the strict terms of the agree-

ment by notice, but led plaintiff to believe that strict performance would not be required. Plaintiff alleges that on 28 November 1951 defendants ''declared the contract null and void and a forfeiture of all payments'' without any previous notice of intention so to do, and took possession of the personal property; that plaintiff has demanded possession and is willing to ''pay any sum or do any act required of plaintiff under the contract as a condition to the granting of the relief'' demanded. Plaintiff then tendered $250 which is alleged to be more than due. Plaintiff alleges that defendants declared a forfeiture for failure of plaintiff to pay the sum of $75 due in November 1951 and asserted no other ground and should be estopped to assert any other ground. Plaintiff further alleges that simultaneously with the taking of the other property, defendants converted a stock of food belonging to plaintiff and of the value of $550. Plaintiff waives title to the same and asks that the value of the food converted be allowed as a credit against any sum found to have been due. Plaintiff claims damage of $100 a month for such time as the property is withheld and prays also for a declaration that plaintiff is the owner of the personal property covered by the contract and for an order granting restitution of the same or its value upon payment of any balance found due.

The answer consisted of a general denial except as to the allegations of the complaint which were specifically admitted. They admit the making of the conditional sales contract. They then set forth verbatim the lease of the restaurant building, which was executed simultaneously with the conditional sales contract on 18 March 1948. The making of the lease was admitted by the plaintiff. The term of the lease was five years from 1 April 1948 to 31 March 1953. The lease covered

the premises on which property covered by the contract was situated. The rental for the full term of five years was stipulated to be $7,500, to be paid as follows:

"The sum of $250.00 on or before April 1, 1948, which shall include the first and last month's payment of rental, and all monthly rental to be paid in advance between the first and tenth day of each month."

There is no express provision in the lease as to the amount of the monthly rental, but we may guess that it was intended to be one-sixtieth of $7,500, or $125 per month. The lease further provided:

"No personal property of the lessee shall be removed from said premises during the five year term of this lease, but shall remain herein as security to the lessors that the lessee will continue paying the full five years rental on said restaurant room, and the lessors shall have a lien herein on all of such personal property and fixtures for any unpaid rental during the five year term of this lease, and may foreclose such lien whenever they deem it necessary to do so to collect on any unpaid balance."

In addition to other provisions commonly found in leases, we quote the following:

"PROVIDED always, and these presents are upon this condition, that if the said rent shall be in arrears for the space of eleven days, or if the said lessee or his representatives or assigns, shall neglect or fail to do or perform, and observe any or either of the covenants hereinbefore contained, which on said lessee's part are to be performed, then and in either of the said cases, the said lessor, or those having their estate in the said premises lawfully may, immediately or at any time thereafter, and while said neglect or default continues, and without further notice or demand, enter into and upon the said premises, or any part thereof, in the name of the

whole and repossess the same, of their former estate, and expel the said lessee, and those claiming under said lessee, and remove or hold all effects (forcibly if necessary), without being taken or deemed guilty in any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent, or preceding breach of covenants.

"Any waiver of any breach of covenants herein contained to be kept and performed by the lessee shall not be deemed or considered as a continuing waiver, and shall not operate to bar or prevent the lessor from declaring a forfeiture for any succeeding breach, either of the same condition or covenant or otherwise."

The answer alleged that the plaintiff defaulted in the payments due, both upon the lease and upon the contract, and that the defendants caused notice to be given to the plaintiff of his defaults and notified him that unless such defaults were "taken care of immediately defendants would take necessary steps to protect their interest." It is further alleged that on or about the 6th day of December 1951 the "plaintiff surrendered possession of said property covered by said conditional sales contract." It is alleged that the premises were "in terrible condition." It is further alleged that:

"Thereafter, on or about the 8th day of January, 1952, the plaintiff commenced this suit against the defendants. That said suit was commenced prior to the time that plaintiff could resume proper occupancy of the premises leased and clean the same up for re-rental."

Finally it is alleged:

"That by reason of said suit of the plaintiff, the defendants have been rendered unable to re-rent the premises covered by said lease and claim the plaintiff is indebted to them for the balance of the rental due under said lease, as well as a forfei-

ture of said conditional sales contract and quieting the title to the property described therein in defendants.''

The prayer of the answer is that the plaintiff be declared obligated ''to pay the balance due under said lease-contract'' and that the court declare a forfeiture of the conditional sales contract, quiet the title of the defendants to the property described therein, and award $500 damages to defendants. The plaintiff admits that he was in default upon the contract and upon the lease; admits the giving of the notice of 21 November 1951, but denies any indebtedness to the defendants and denies that he surrendered possession of the personal property to the defendants. The reply affirmatively alleges that in December 1951 the lease was terminated, at which time one month's rental of $125 was due and delinquent, ''which sum was tendered to the defendants prior to the bringing of this suit.''

The reply continues:

''That at the time tender was made to defendants and after forfeiture of the lease was declared by defendants, plaintiff made inquiry of defendants as to their claims for the purpose of making tender and they claimed absolute ownership of the personal property and did not claim a lien, which position on the part of defendants was maintained until this suit was brought and ought not therefore be permitted to assert it.

''That plaintiff paid on April 1, 1948, the sum of $250.00 to plaintiffs [defendants] which was agreed to be the first and last months payment of rental. That December of 1951 was the last month of the existence of the lease. That in December of 1951, defendants elected to and did declare the lease terminated, *as was their right to do*. That the lease agreement did not provide for forfeiture of the pre-

paid sum of $125.00 on the last months rental, but that defendants did nevertheless retain said sum of money for and on account of the last months rental, and there is now nothing due or owing on said lease." (Italics ours.)

The plaintiff offers to pay any sum which the court may find due as a condition to the relief prayed for in the complaint. It is further alleged:

"That none of the matters asserted in the answer were claimed or asserted by defendants at the time forfeiture was declared as being the basis or reason for the same and ought not be permitted to now make any claim thereon."

Pursuant to the order of the court, dated 5 January 1953, plaintiff filed a supplemental complaint alleging damage in the sum of $1,200 by reason of the continued wrongful withholding of the property. The Abstract of Record states that the case was tried as a suit. On the 16th day of April 1953 the court entered a declaratory judgment reciting that the parties had stipulated that the case be tried by the court without a jury "whether it be found a suit in equity or an action at law" and that it was further stipulated that "rules should be applied as in a case in equity * * *." The court then declared that the plaintiff forfeited all right in the personal property on or about 6 December 1951 and that the forfeiture was accompanied by a surrender of possession thereof. The court further found that the defendants took possession of a stock of merchandise and supplies belonging to the plaintiff and were obligated to pay to the plaintiff the reasonable value thereof. The court then said

"That the defendants admitted receiving such personal property to the amount of $140.50. From the uncertainty in identification of items of such

merchandise and supplies it is impossible for the Court to determine the value thereof but the same does not exceed the sum of $250.00. That the plaintiff is entitled to credit for such amount from the defendants.''

The court further found that the lease was forfeited, terminated and surrendered on 6 December 1951, at which time rental was owing in the amount of $250.00. It was further held that the $250 credit given to the plaintiff on account of merchandise taken by the defendants should be set off against the accrued rent of $250. The court held that neither party was entitled to recover anything from the other but that the plaintiff was entitled to have refunded to him the sum of $250 which he had tendered and which had been filed with the county clerk.

■ The plaintiff sought the relief of equity, both before the trial court and upon appeal. At the trial below, counsel for defendants took the position that the plaintiff had an adequate remedy at law and therefore that the proceeding was not equitable in nature. Reference to the defendants' answer, however, shows that the prayer was ''for a decree declaring the plaintiff obligated to pay the balance due under said lease-contract, declaring a forfeiture of said conditional sales contract and quieting the title to the property described therein in the defendants'' as well as for damages. The answer indicates that the defendants sought the aid of equity to effectuate a forfeiture and that they were not merely seeking a declaration that they had previously by independent action caused a forfeiture of the personal property. The trial court held that the proceedings were equitable in nature and we agree. *Endicott v. Digerness,* 103 Or 555, 205 P 975. From the evidence

we find that the lease and the contract were executed on the same day and constituted parts of a single transaction. The agreed purchase price for the personal property, fixtures and equipment, originally covered by the conditional sales contract, was $5,500, on which the plaintiff had made a down payment of $2,500, and by monthly payments had reduced the balance owing in November 1951 to $131.32. The rent required by the lease was also paid up to and including October 1951. The lease was terminated in December 1951. The present position of the defendant-respondents is clear.

We quote from their brief:

"Respondents then on December 6, 1951, the day following, took possession of the premises and property as their own."

Thus, notwithstanding the prayer of the answer, they seek to return to the position taken before suit was filed.

On 6 December 1951, one month's rent of $125 was delinquent, as well as one instalment on the personal property. On 1 November 1951 the lease would have had 17 months to run if not terminated. During the 43 months from the execution of the contract and lease, agreements were substantially carried out, the relations of the parties were friendly, and no protest had been made by the defendants. The sole apparent exception appears to be some default in the payment of taxes and insurance plus an indefinite claim that some of the personal property was not kept in good condition. The amount of such defaults and the time as of which they occurred is not made clear.

■■ On six occasions during this period, payments were made after the expiration of the period of grace and between the 12th and 15th days of the month in

which the payments were due. The evidence is not sufficient to establish any action or indulgence by the vendors which extended the time of payment or lulled the plaintiff into a false sense of security. We find no intentional relinquishment of a known right and no estoppel as the result of the slight delays in the making of the six payments. *Samuels v. Mack-International Etc. Corp.*, 128 Or 600, 275 P 596. The contract contained a time-essence clause, but it did not provide for an automatic forfeiture. In event of default, the vendors had three rights specified in the contract from which to choose. They might declare the contract void and take the property. In the event of default in payment of insurance and taxes they could pay the same and charge the amount to the buyer; or they might transfer payments made on the lease to cover the delinquency of the conditional sales contract "so as to keep the contract of purchase up to date". The options which are commonly vested in a conditional vendor are enumerated and discussed in *Endicott v. Digerness*, supra, and in the cases therein cited. Since any right of forfeiture was dependent upon a choice of remedy plus action indicating that choice, it follows that the vendors could not declare a forfeiture without first giving reasonable notice, even if there had been no waiver of the time-essence clause. *Epplett v. Empire Investment Co., Inc.*, 99 Or 533, 541, 194 P 461, 700.

In *Grider v. Turnbow*, 162 Or 622, 641, 94 P2d 285, the court said:

> "The courts have placed so much emphasis on the necessity of rehabilitating the time-essence clause, when once waived, before a forfeiture may be declared, that the impression is created that a vendor, before declaring a forfeiture, need not give the vendee notice of his intention so to do unless

there has been a waiver. Such is not the case. However, there is this distinction: The period of time that would be deemed reasonable notice to the vendee after waiver of the time-essence clause would of necessity be greater than if there had been no such waiver."

The last-cited cases involved the rights of vendor and purchaser. But in *Geroy v. Upper* and *Knight v. Barry,* 182 Or 535, 187 P2d 662, this court applied the rule requiring reasonable notice to cases of forfeiture under conditional sales contracts. See also *Zumstein v. Stockton,* 57 Or Ad Sheets 9, p 541, 264 P2d 455. It appears therefore, that the defendants could not exercise any legal right to forfeit the plaintiff's interest in the property covered by the conditional sales contract without complying with two conditions; first, that they give reasonable notice of intention to forfeit, and second, that they must declare in some unequivocal manner the exercise of the right to forfeit. Forfeitures are regarded with judicial hostility and where a party insists upon a forfeiture he must establish his right by clear and convincing proof. *Johnson v. Feskins,* 146 Or 657, 31 P2d 667.

In defendants' brief it is said that they "do not quarrel with the law set forth in the cases cited by the Appellant under said points and authorities No. 3, 4 and 5." Point 5 of the plaintiff's brief to which the defendants referred reads as follows:

"When the contract is not self-executing and does not contain a provision allowing forfeiture without demand and notice, the law by implication introduces into such contract a provision that the right of forfeiture may be exercised only upon reasonable notice and upon purchaser's failure to pay within the time fixed by such notice."

The proposition thus stated is supported by the cases cited thereunder, namely: *Epplett v. Empire Investment Co.; Grider v. Turnbow; Geroy v. Upper;* all supra; and 47 Am Jur, Sales, § 899. The entire matter of the duty of a vendor to give reasonable notice before forfeiture, even when there has been no waiver or estoppel, is discussed in *Zumstein v. Stockton,* supra. It will not be repeated here. It must be noted that the contract in the case at bar did not provide for automatic forfeiture without notice.

██ The defendants contend that the plaintiff evidenced his intention "to go no further under his contract and to surrender his interest therein to the Defendants", and that he thereby abandoned the property. Of course, if there was an abandonment of the personal property, that would be a complete defense to the plaintiff's suit. To require a notice of intention to forfeit or unequivocal acts forfeiting, after an abandonment, would be to require an idle ceremony. *Anderson v. Hurlburt,* 109 Or 284, 219 P 1092. But a surrender of possession cannot be said, as a matter of law, and in all cases, to be inconsistent with the retention by the buyer of some interest in the contract or the property involved, especially where it is surrendered to one having a right to a possessory lien.

We will now consider whether there was an abandonment of the personal property, and if there was not, then whether reasonable notice of intent to forfeit plus appropriate action indicating a forfeiture, was taken. The plaintiff testified that on 18 November the defendant Earl Wood asked plaintiff for a check, and plaintiff told him he would have it in a few days, and that the defendant said "O.K." and walked out. The defendant testified that he tried to collect the rent be-

fore the 10th of November but failed to find the plaintiff. This is immaterial because the period of grace had not then expired. The defendant then went hunting and did not return until 18 November when the following conversation took place: The defendant testified that he told the plaintiff that he would have to have the money and that he made no agreement for extension of time. On 18 November the plaintiff closed the cafe. He testified:

"A. I told him I was going to sell the place or lease it out. I was unable to operate it.

"Q. Did he object to that?

"A. No. He walked out."

The attorney for the defendants acting as their representative wrote a letter bearing date of 21 November, to the plaintiff, from which we quote:

"They [the defendants] advise us that you are in default as to both the lease and the personal property agreement and that unless the defaults are taken care of immediately they intend to take whatever steps are necessary to protect their interests.

"It is also requested that you call upon the undersigned in his office immediately upon receipt of this letter to discuss this situation."

The plaintiff admitted receiving the letter "about a week or so later." He testified that his next conversation with the defendant Earl Wood occurred a week or 10 days after the 18th and in the cafe. We think the conversation in question occurred on December 6. We quote from plaintiff's testimony:

"A. * * * Mr. Vance wanted to lease the place with option to buy and we had gone in there and checked the inventory over. I was to meet Mr. Vance at noon. When I went in Mr. Wood was there.

"Q. Was Mr. Vance there?

"A. No. I asked if Mr. Vance was there and I told him I was to lease to Mr. Vance and he [Wood] told me [he] had taken it over and if he [Vance] wanted to lease the place he would have to talk to him.

"Q. Did you agree to that?

"A. I told him if that was the way he felt about it, I just walked out.

"Q. Had he previously told you that he was going to forfeit your lease to the property?

"A. Never a word, never."

Counsel for the defendant objected to the last-quoted question and answer on the ground "that it affirmatively appears by admission in the pleadings that he received the notice on November 21, 1951." This allegation was not affirmatively admitted but it is true that the plaintiff did not in his reply deny the same. By failing to deny, he admitted that on the 21st day of November defendants caused notice to be given. However, as we shall show, the only notice given did not constitute any effective notice of forfeiture.

The plaintiff left the keys to the restaurant in the defendant's hotel on the 5th of December, and stated to the defendant Vanilliea Wood, "You might want to get in. I can't do anything with it", which was all of the conversation at that time.

█ In determining the legal effect of the various dealings with the personal property covered by the contract, it must be remembered that the parties were also dealing with the leased premises. The lease authorized defendants to repossess without notice or demand in event of default, and provided that no waiver should operate as a bar to forfeiture. The answer alleged default in rent payment and the defendants' brief

states that on December 6 they "took possession of the premises and property as their own." The evidence of the defendant establishes that he told plaintiff on December 6 that he had taken the lease over and that he refused to let the plaintiff sell anything. The plaintiff's reply alleges that "in December of 1951, defendants elected to and did declare the lease terminated, *as was their right to do.*" (Italics ours.) Thus the plaintiff acquiesced in the termination of the lease. We hold that it was, in legal effect, terminated on 6 December. That being true, the defendants can claim no rent for the balance of the agreed term.

It is by no means clear that either party considered that the plaintiff's rights under the conditional sales contract had been forfeited, although the defendants now claim in their brief that they took the property as their own. We have said that the lease and contract constitute one transaction. Under the contract, defendants had an option to declare a forfeiture for default, but under the lease it was provided that the personal property covered by the contract should remain in the restaurant "as security to the lessors that the lessee will continue paying the full five years rental * * *", and it was provided that the lessors should have a lien on the personalty for any unpaid rental and might foreclose the same.

In November one instalment of rent had become delinquent when the plaintiff on 5 December turned the keys over to Mrs. Vanilliea Wood. He certainly did not unequivocally abandon the personal property. The defendants' answer does not allege abandonment, but only that the plaintiff surrendered possession of the personal property. The answer does ineptly allege that "plaintiff is indebted to them for the balance of the rental due under said lease, as well

as a forfeiture of said conditional sales contract and quieting the title to the property described therein in defendants.'' The testimony of the defendants is still more ambiguous. Concerning the personal property the defendant Earl Wood testified as follows:

"Q. But you do contend the property is yours, now? And I will ask you whether that is right or not?

"A. I contend the property is mine until the lease is satisfied.

"Q. You have contended since December 6th, by your own statement, the property is yours?

"A. I contend the contract and lease hasn't been lived up to.

"Q. So the property is yours? That is your contention?

"A. Yes.

"Q. Based on that, why do you say you could not do anything pending the suit?

"A. I am holding it until the Court says what can be done with it.''

Again he testified:

"A. * * * I figured the lease and the contract as a whole one property.

"Q. How did you determine the lease?
"A. I don't know.

"Q. You wouldn't let him back in?
"A. Not until he paid up.

"Q. How much did you want him to pay?
"A. The full amount.

"Q. You wouldn't let him back into the lease unless he paid the full amount he owed?
"A. What he owed.''

At that time the defendant Earl Wood obviously considered that he held the personal property as security

for indebtedness on the lease. The fact that the delivery of the keys and the taking of the possession of the premises amounted to a surrender and termination of the lease does not establish any intentional abandonment of the personalty by the plaintiff, or an intentional forfeiture of it by act of the defendants, in view of the record. The prayer of the answer confirms this opinion. The evidence indicates that at the time of a tender later made by the plaintiff, the defendants considered that they were entitled to some $2,000. This was apparently on the theory that they had a right to collect the rental for the balance of the term of the lease. In this they were in error since they had terminated the lease as was their right.

We are also of the opinion that the evidence is insufficient to show any legally effective act of the defendants operating as a forfeiture of the personalty. Since the defendants had several different options from which to choose in the event of a default on the contract, we hold that the statement in the letter dated November 21 to the effect that the defendants "intend to take whatever steps are necessary to protect their interests" is not reasonable or any notice of intent to declare a forfeiture of the personal property on which there was then a balance of less than $200 on the total contract price of $5,500. Plaintiff acquiesced in the termination of the lease, but he has consistently asserted his right to the personal property. When for any reason equity has acquired jurisdiction to pass upon the issue, its attitude concerning forfeitures after substantially all of the contract price has been paid by the conditional buyer, is well stated in *J. D. Pittman Tractor Co. v. Bolton*, 238 Ala 300, 191 So 360, as follows:

"But equitable relief does not depend upon waiver of the conditions written into the contract.

For example, if the buyer should meet every instalment on time until the greater part of the debt is paid, and then from inability or neglect fails to pay an instalment on time, the seller, taking advantage of the letter of his contract, proceeds to repossess the property as his own, refusing the buyer an opportunity to pay the balance, the seller is using the forfeiture provisions of the contract oppressively. Equity, working out its own remedies, interposes to prevent injustice, provided always the buyer is ready and willing to pay the debt. The primary purpose of the contract is to secure the debt. Equity so deals with it."

And see *Barton v. W. O. Broyles Stove & Furniture Co.*, 212 Ala 658, 103 So 854.

 There is another circumstance which bears upon the rights of the parties and upon the type of relief which should be given. We have referred to the provision of the conditional sales contract which required the plaintiff to install approximately $2,500 of additional personal property and equipment and which provided that such property should be deemed a part of the sellers' property and be subject to the provisions of the contract, because "the same will be more or less mixed and merged with the personal property which the sellers are hereby selling to the buyer * * *." It is one thing for the courts to recognize or enforce a strict forfeiture of the interests of a buyer in property which the seller owned and to which he retains title. It is quite another matter when a court is asked to forfeit property which never did belong to the conditional vendor. The plaintiff testified without contradiction that he did install additional property of a value considerably in excess of $2,500. We agree that the additional property purchased and installed by the plaintiff became security for any sum which may be found to be

due to the defendants, but we hold that it did not become the property of the vendors when it was first purchased and installed. The following cases indicate that an agreement, in form a conditional sales contract, should be treated in equity as a chattel mortgage when the purpose of the transaction is to give to the person named as the conditional seller, security in property which he never owned and therefore could not have sold. *Bell v. Hanover Fire Ins. Co.,* 107 Or 513, 214 P 340, 215 P 171; *Kliks v. Courtemanche,* 150 Or 332, 43 P2d 913. In *Borengasser v. Chatwell,* 207 Ark 608, 182 SW2d 389, the vendor sold the assets of a business, retaining title until the full purchase price should be paid. The contract provided:

> "* * * that the seller should have title not only to 'the present assets' of the business 'but is to be given title to any new merchandise purchased for said company until the entire purchase price referred to herein has been paid.' Another clause provides that the buyer should keep the stock and assets up and in good condition, take care of the accounts both payable and receivable and pay taxes. On failure to comply with any provision of the contract, purchaser agreed to deliver possession of said assets on demand to seller."

On default of the buyer the assignee of the seller brought action to establish and enforce a vendor's lien on all of the assets, including the after-acquired property. The Supreme Court held that the sellers were not entitled to a declaration of a vendor's lien under Section 11422 of Pope's Digest and that the statute contemplated that one must be the vendor of the chattels if he is to have the benefit of a vendor's lien. The court then said:

> "But as to the chattel assets acquired by Borengasser after the original sales contract, Chatwell

was not the vendor, was never the owner, and it is difficult to perceive how he or his assignee could establish a vendor's lien on property he did not own and did not sell. As to this, we think the court erred in declaring and attempting to enforce such a lien. Not having the right to such a lien, appellee had no right to an attachment of this property and the court erred in sustaining it to this extent only, because the title to the so-called 'new property' was never in appellee. *Ferguson v. Hetherington,* 39 Ark. 438.

"We think the contract here involved was ineffectual in so far as it attempted to put the title to the 'new property' in appellee so as to give her a vendor's lien under said statute, but we agree with appellants that it did give her an equitable lien on said assets acquired subsequent to the date of said contract which lien might have been enforced in a court of equity. * * *"

The principle applied in that case is applicable here.

Upon consideration of all of the evidence, the lease and the contract, and in view of the confusion of the after-acquired goods with the goods covered by the contract, we hold that this case must be remanded to the circuit court sitting in equity. That court should determine the unpaid balance owing on the conditional sales contract, plus the amount of rental which was in arrears on 6 December 1951, plus the amount of damage, if any, to the leased premises as of the same date if caused by any violation of the terms of the lease, plus the amount of any taxes or insurance payments as to which the plaintiff was then in default. The court should then determine the value of the merchandise which was seized by the defendants and which was not covered by the contract, to which amount should be added the sum of $250 which was tendered by the plaintiff and deposited with the county clerk to cover

any amount owing on the conditional sales contract. These two items should be set off as against the amount found owing to the defendants as above outlined. The defendants are not entitled to hold any of the personal property as security for any rental except such as was due on the date that the lease was cancelled and possession of the property taken by the defendants. If on a balancing of these claims the trial court shall find that the plaintiff has paid the unpaid balance owing on the contract, and that there was no money owing from the plaintiff to the defendants on 6 December 1951, the plaintiff shall be declared to be the owner of the personal property and entitled to its possession.

If, treating the contract and lease as one transaction, the court shall find that the amount owing the defendants exceeds the credits to which the plaintiff is entitled, then the defendants shall be entitled to a lien on the personalty to secure the amount owing, and if the plaintiff shall fail to pay such amount, the lien may be foreclosed.

From the decree of the court it appears that the value of the merchandise taken by the defendants was fixed at $250, though the court stated that it was "impossible for the Court to determine the value thereof * * *." In this the court erred. If the amount cannot be determined by the evidence taken or to be taken, then the court should credit plaintiff only with the amount admitted by the defendants to be the value of the merchandise.

We are reluctant to send an equity suit back for further trial, but in view of the confused state of the record and of the possibility that the defendants may be entitled to foreclosure in equity of the lien on the personal property, we find no other course open to us. The conclusion at which we have arrived will eliminate

the extreme hardship to the plaintiff which would follow from the decree of forfeiture declared by the trial court, and at the same time will protect any legitimate interests of the defendants.

The claim of damages for withholding the personal property, asserted in plaintiff's supplmental complaint, cannot be determined upon this record. We fully appreciate that issues may arise relative to the removability of some of the equipment installed by the plaintiff in the premises owned by the defendants. Under the testimony now before us, the value of the leasehold, and especially the value of the equipment therein, will vary by some thousands of dollars, depending upon whether the lease and the equipment are disposed of together or separately. But these questions cannot be avoided unless, of course, the parties cooperate to avoid mutual loss by leasing the premises and selling the personalty to the same party.

The decree is reversed. The cause is remanded to the circuit court for further proceedings conformable to this opinion and for the taking of additional testimony as may be deemed necessary. The plaintiff is entitled to costs.